THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
April 4, 2007

**UNITED STATES PATENT AND TRADEMARK OFFICE**

————

**Trademark Trial and Appeal Board**

————

In re Association of the United States Army

————

Serial No. 76578579

————

Scott J. Major of Millen, White, Zelano & Branigan, P.C.
for Association of the United States Army.

David A. Hoffman,[1] Trademark Examining Attorney, Law Office
107 (J. Leslie Bishop, Managing Attorney).

————

Before Grendel, Drost and Bergsman, Administrative
Trademark Judges.

Opinion by Grendel, Administrative Trademark Judge:

**INTRODUCTION**

Applicant seeks registration on the Principal Register

of the mark depicted below

---

[1] A different Trademark Examining Attorney handled this
application prior to appeal.



for services recited in the application, as amended, as "association services, namely promoting the interests of active members of the United States Army, National Guard, reservists, civilians, retirees and family members," in Class 35.[2] The application includes a claim of acquired distinctiveness under Trademark Act Section 2(f), 15 U.S.C. 1052(f), as to the wording ASSOCIATION OF THE UNITED STATES ARMY, as well as a disclaimer of ASSOCIATION apart from the mark as shown.

---

[2] Serial No. 76578579, filed on March 2, 2004. The application is based on use in commerce under Trademark Act Section 1(a), 15 U.S.C. §1051(a), and August 1, 1954 is alleged in the application as the date of first use of the mark anywhere and the date of first use of the mark in commerce. The application includes the following "description of mark" statement: "The mark consists of an eagle with gold body, leaves and crest." The following "colors claimed" statement appears in the application: "The colors gold, black and white are claimed as a feature of the mark." Finally, the following "color location statement" appears in the application: "The eagle, plant branch and crest with torch design are gold with a black shadow. The wording and the outside line around the circle carrier design is black. The inner background of the circle carrier design is white."

At issue in this appeal is the Trademark Examining Attorney's final refusal to register applicant's mark on the ground that the mark, as used in connection with the recited services, so resembles each of three previously-registered marks as to be likely to cause confusion, to cause mistake, or to deceive. Trademark Act Section 2(d), 15 U.S.C. §1052(d). All three of the cited registrations are owned by the Department of the Army, a federal agency.

The first cited registration, Registration No. 2703479,[3] is of the mark depicted below:



for services recited in the registration as:

> employment services, namely personnel placement
> services, employment agency services, employment
> counseling and recruiting services; providing
> information regarding employment and career
> opportunities via a website by means of a global
> computer network; computer services, namely,
> providing interactive computer databases in the

---

[3] Issued April 8, 2003.

fields of business and career oriented
information via global computer network,

in Class 35; and

career counseling services, namely, providing
information about career planning and career
development via a global computer network;
providing search engines for obtaining data on
business, employment opportunities and careers
via a home page on a global computer network,

in Class 42.[4]

The second cited registration, Registration No.

2676969,[5] is of the mark depicted below (RESERVE

disclaimed):



---

[4] This registration and Registration No. 2676969, discussed
*infra*, also include in their identifications of goods and
services various Class 16 and Class 21 goods which are not at
issue in this appeal.

[5] Issued January 21, 2003.

for the same Class 35 and Class 42 services as those recited above for Registration No. 2703479.

The third cited registration, Registration No. 2910619,[6] is of the mark depicted below:



for Class 9 goods identified in the registration as "downloadable educational software for teaching users about the armed forces, career education, and military tactics and strategies, and instruction manuals sold as a unit thereof."[7]

The appeal is fully briefed. After careful consideration of all of the evidence of record and the

---

[6] Issued December 14, 2004.

[7] The identification of goods in this registration also includes various other Class 9 goods which are not at issue in this appeal.

arguments of counsel, we affirm the Section 2(d) refusal to register as to all three of the cited registrations.

**LIKELIHOOD OF CONFUSION**

Our likelihood of confusion determination under Section 2(d) is based on an analysis of all of the facts in evidence that are relevant to the factors bearing on the likelihood of confusion issue (the *du Pont* factors).  *See In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973).  *See also Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005); *In re Majestic Distilling Co.,* 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003); *In re Dixie Restaurants Inc.*, 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997).  Considering all of the evidence of record as it pertains to these factors, as well as counsels' arguments with respect thereto, we find as follows.

**Similarity of Marks**

The first *du Pont* factor requires us to determine the similarity or dissimilarity of the marks when viewed in their entireties in terms of appearance, sound, connotation and overall commercial impression.  *Palm Bay Imports, Inc.,*

*supra.* The test, under the first *du Pont* factor, is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their overall commercial impression that confusion as to the source of the goods or services offered under the respective marks is likely to result. The focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks. *See Sealed Air Corp. v. Scott Paper Co.*, 190 USPQ 106 (TTAB 1975). Furthermore, although the marks at issue must be considered in their entireties, it is well-settled that one feature of a mark may be more significant than another, and it is not improper to give more weight to this dominant feature in determining the commercial impression created by the mark. *See In re Chatam International Inc.*, 380 F.3d 1340, 71 USPQ2d 1944 (Fed. Cir. 2004); *In re National Data Corp.*, 753 F.2d 1056, 224 USPQ 749 (Fed. Cir. 1985).

First, we do not agree with applicant's contention that the design elements in the respective marks are the dominant features in the commercial impressions created by the marks. The designs certainly are significant elements of the marks, especially with regard to their appearance, but we find that it is the literal portions of the marks,

and not the design elements, which are likely to be recognized and used by purchasers as the primary source-indicating features of the marks.

In particular, we find that it is the words U.S. ARMY and U.S. ARMY RESERVE in the cited registered marks, and the words UNITED STATES ARMY in applicant's mark, which are the dominant source-indicating features of the respective marks. This is so because the term U.S. Army (or variations thereof) is a well-recognized designation due to its obvious national prominence as the name of one of the branches of the U.S. military. We note as well in this regard that the wording U.S. ARMY in the cited registered marks is not disclaimed.

For these reasons, we find that it is not the design elements but rather the words, especially the words U.S. ARMY in the cited registered marks and the words UNITED STATES ARMY in applicant's mark, which serve as the dominant features of the respective marks for purposes of our analysis under the first *du Pont* factor. *See In re Chatam International Inc., supra*; *In re National Data Corp., supra*. We cannot conclude, as applicant would have us conclude, that it is the design elements which dominate the marks' commercial impressions, or that the differences

in the respective designs suffice to make the marks dissimilar in their entireties.

Viewing the marks in terms of appearance, we find that applicant's mark and the cited registered marks are somewhat dissimilar due to the differences in the respective design elements and the differences in the way that the wording is displayed in each of the marks. In terms of sound, we find that the word ARMY would be pronounced the same way in all of the marks, but that applicant's mark differs from the cited registered marks insofar as it includes the words ASSOCIATION OF THE and UNITED STATES, and insofar as one of the cited registrations includes the word RESERVE. On balance, we find the marks are somewhat dissimilar as to appearance and sound.

However, we find that applicant's mark and the cited registered marks are similar in terms of connotation. First, the design features of the respective marks contribute little if anything to the connotations of the marks, and they therefore do not suffice to distinguish the marks in terms of connotation. Next, the wording U.S. ARMY in two of the cited registered marks means the same thing as the wording UNITED STATES ARMY in applicant's mark. Both formulations would be understood as referring to a

9

particular military entity, i.e., the U.S. Army. The words U.S. ARMY RESERVE in the third cited registration likewise would be readily understood as identifying the U.S. Army Reserve, a component of that particular military entity, the U.S. Army. Applicant's evidence of third-party registrations of marks which include the word ARMY do not suffice to support a contrary conclusion, because the word ARMY in each of those marks appears without the additional designation "U.S." or "UNITED STATES," which directly and exclusively serves to identify the ARMY referred to in the marks as the particular military entity known as the U.S. Army or the United States Army.

The word ASSOCIATION in applicant's mark, which the record shows to be defined in pertinent part as "an organized body of people who have an interest, activity or purpose in common; a society,"[8] lends a somewhat different connotation to applicant's mark as compared to the cited registered marks. However, that slight difference in connotation does not suffice to overcome the obvious similarity in the connotations of the marks as a whole which results from the presence in each mark of the designation U.S. ARMY or its equivalent, UNITED STATES

---

[8] The American Heritage Dictionary of the English Language (4th ed. 2000).

10

ARMY.  Moreover, the words OF THE in applicant's mark clearly and directly link the words ASSOCIATION and UNITED STATES ARMY.  The "association" identified by the mark is not just any association, but rather is specifically an association "of" the United States Army, i.e., the United States Army's "association."

Applicant, in arguing to the contrary, requests that we take judicial notice that "the term association generally, and perhaps exclusively, is used to identify a non-governmental organization" (Reply brief at 2), and thus would not be understood by purchasers to refer to a governmental agency or entity like the U.S. Army.  However, we find that such asserted "fact" is not a proper subject of judicial notice but rather is a fact which must be established with competent evidence.  As discussed *infra* in connection with the second *du Pont* factor, we find that the evidence of record does not suffice to prove that the term "association" would necessarily or likely be viewed by the public as referring only to a non-governmental agency.

Moreover, even if we were to assume that "associations" are always non-governmental organizations, it would not affect our finding on this issue.  That is, even if the relevant public were to understand that applicant's association is not technically a governmental

11

agency or entity, they nonetheless are likely to assume, due to the presence of the words OF THE UNITED STATES ARMY in applicant's mark, that applicant's organization and its services are sponsored or approved by, or otherwise affiliated with, the United States Army.

Thus, we find that applicant's mark is similar to the cited registered marks in terms of connotation.

Similarly, we find that applicant's mark is similar to the cited registered marks in terms of overall commercial impression. Both applicant's mark and the cited registered marks name and refer directly to the same entity, i.e., the United States Army or U.S. Army. It is that entity which is likely to be perceived as the source or sponsor of the respective goods and services. Although applicant's mark identifies applicant as an "association," the mark specifically states that the association is an association "of" the United States Army. Purchasers are likely to assume from this language that the association to which the mark refers is affiliated with or sponsored by the United States Army, or that the United States Army has approved or sanctioned use of the mark. Nothing about the design features of the respective marks suffices to dispel such an assumption by the public.

12

For these reasons, we find that although applicant's mark is somewhat dissimilar to the cited registered marks in terms of appearance and sound, such points of dissimilarity are greatly outweighed by the strong similarity between the marks in terms of connotation and overall commercial impression. As noted above, the test is not whether the marks can be distinguished upon side-by-side comparison, but rather whether they are likely to create an assumption on the part of purchasers that the goods or services offered under the marks originate from or are approved by a single source. Due to applicant's use of the designation UNITED STATES ARMY in its mark, a designation which is in essence identical to the designation U.S. ARMY appearing in the cited registered marks and which in fact is the name of the United States Army, purchasers are likely to assume that there is a source, sponsorship or other affiliation between the United States Army and applicant's association, or that the United States Army has approved use of the mark in question. The presence of the words OF THE in applicant's mark, which directly connect the named "association" to the United States Army, makes the marks even more similar in terms of source-indicating significance. We conclude that applicant's mark and the cited registered marks are

13

similar, and that the first *du Pont* factor therefore weighs in favor of a finding of likelihood of confusion.

**Similarity of Goods and Services**

We turn next to the second *du Pont* factor, which requires us to determine the similarity or dissimilarity of applicant's services and the goods and services identified in the cited registrations.  It is settled that it is not necessary that the respective goods and/or services be identical or even competitive in order to support a finding of likelihood of confusion.  That is, the issue is not whether consumers would confuse the goods and/or services themselves, but rather whether they would be confused as to the source of the goods and/or services.  It is sufficient that the goods and/or services be related in some manner, or that the circumstances surrounding their use be such that they would be likely to be encountered by the same persons in situations that would give rise, because of the marks used thereon, to a mistaken belief that they originate from or are in some way associated with the same source or that there is an association or connection between the sources of the respective goods and/or services.  *See In re Martin's Famous Pastry Shoppe, Inc.*, 748 F.2d 1565, 223 USPQ 1289 (Fed. Cir. 1984); *In re*

14

*Melville Corp.*, 18 USPQ2d 1386 (TTAB 1991); and *In re International Telephone & Telegraph Corp.*, 197 USPQ 910 (TTAB 1978).

To review, applicant's services, as recited in the application, are "association services, namely promoting the interests of active members of the United States Army, National Guard, reservists, civilians, retirees and family members," in Class 35.  The services recited in the cited '479 U.S. ARMY and '969 U.S. ARMY RESERVE registrations are

> employment services, namely personnel placement services, employment agency services, employment counseling and recruiting services; providing information regarding employment and career opportunities via a website by means of a global computer network; computer services, namely, providing interactive computer databases in the fields of business and career oriented information via global computer network,

in Class 35; and

> career counseling services, namely, providing information about career planning and career development via a global computer network; providing search engines for obtaining data on business, employment opportunities and careers via a home page on a global computer network,

in Class 42.  The goods identified in the cited '619 U.S. ARMY registration are, *inter alia*, "downloadable educational software for teaching users about the armed

forces, career education, and military tactics and strategies, and instruction manuals sold as a unit thereof," in Class 9.

We find, first, that applicant's "association services" are related to the Class 35 and Class 42 services recited in the '479 and '969 registrations. The Trademark Examining Attorney has made of record six use-based third-party registrations (Reg. Nos. 2306177, 2701696, 2665914, 3024061, 2836224 and 3041735) which include in their recitations of services both "association services" such as applicant's services, and various services related to employment and career development, counseling and recruitment, like those recited in the cited '479 and '969 registrations. Although these third-party registrations are not evidence that the marks shown therein are in use or that the public is familiar with them, they nonetheless have probative value to the extent that they serve to suggest that the goods or services listed therein are of a kind which may emanate from a single source under a single mark. *See In re Albert Trostel & Sons Co.,* 29 USPQ2d 1783 (TTAB 1993); and *In re Mucky Duck Mustard Co. Inc.*, 6 USPQ2d 1467 (TTAB 1988).

Additionally, the record includes printouts from applicant's website which show that applicant itself offers

employment and career related services as part of, or in conjunction with, its association services. See, e.g., the following excerpt (emphasis added):

> Approximately 2,000-4,000 guard and reserve soldiers have been deployed from North Alabama, many are returning home without jobs. AUSA Redstone-Huntsville recognized this and is trying to do something about it. **We organized a Job Fair** to be held with 60-100 employers on 26 April at the Challenger Club on Redstone Arsenal. In preparation for that event, AUSA sponsored **a workshop to help prospective applicants learn what is required – resume writing and interviewing skills among many items of discussion.**

Based on this evidence, we find that applicant's "association services" are related to the career and employment related services recited in the cited '479 and '969 registrations.

Applicant argues, however, that its "core" activity is lobbying Congress and various federal agencies on behalf of its members, and that this activity is unrelated and dissimilar to the employment and career related services recited in the cited registrations. However, it is settled that we must make our determination under Section 2(d) based on applicant's services as recited in the application, and not on any extraneous evidence as to the actual nature of applicant's services. *See Octocom*

17

*Systems, Inc. v. Houston Computers Services Inc.*, 918 F.2d 937, 16 USPQ2d 1783 (Fed. Cir. 1990). Applicant's recitation of services broadly refers to "association services," which the evidence of record shows to be related to the employment and career related services recited in the cited registrations.

Applicant also argues that its services are unrelated to registrant's services because "associations" necessarily are non-governmental organizations, such that purchasers are unlikely to assume that applicant's association services are related to the employment and career related services recited in the U.S. Army's registrations. As discussed above, however, the record does not persuasively support applicant's contention that associations necessarily are, and are known by purchasers to be, non-governmental organizations. The third-party registrations of ASSOCIATION marks submitted by applicant are insufficient to establish this proposition. Likewise insufficient is the declaration of Lt. Gen. Rhame (applicant's Vice President of Finance and Administration), who states, *inter alia*, that

> I believe current and former personnel of the
> U.S. Army clearly distinguish between the goods
> and services as officially provided to them by
> the U.S. Army as a source and, on the other hand,

18

> goods and services provided by non-government
> sources; these personnel would recognize a sharp
> demarcation that distinguishes military from
> civilian sources of goods and services; and these
> principles are applicable here to the association
> services of AUSA [applicant] that would be
> recognized by these personnel as not being
> provided by or affiliated with the U.S. Army.

We simply cannot agree that such a "sharp demarcation" exists in the public's understanding as to the relationship or lack of a relationship between an association and a governmental agency where the name of the association includes within it the name of the agency.  Even if we were to assume that "associations" in fact are always non-governmental organizations, we still would find that the relevant public is likely to assume, due to the presence of the words OF THE UNITED STATES ARMY in applicant's mark, that applicant's organization and its services, and its use of its mark, are connected with or approved by the United States Army.

For these reasons, we find that the "association services" recited in applicant's application are related to the Class 35 and Class 42 employment and career related services recited in the cited '479 and '969 registrations.

Next, we find that applicant's recited services are related to the goods identified in cited Registration No. 2910619 as "downloadable educational software for teaching

19

users about the armed forces, career education, and military tactics and strategies, and instruction manuals sold as a unit therewith." For the same reasons as those discussed above in connection with our finding that applicant's association services are related to registrant's employment and career related services, we likewise find that applicant's services are related to registrant's downloadable software to the extent that such software includes "career education" as part of its subject matter.

For all of the reasons discussed above, we find that the "association services" recited in applicant's application are related to the Class 35 and Class 42 services recited in the cited '479 and '969 registrations, and that they likewise are related to the Class 9 goods identified in the '619 registration as downloadable software dealing with "career education." The second *du Pont* factor accordingly weighs in favor of a finding of likelihood of confusion.

**Similarity of Trade Channels and Purchasers**

Under the third *du Pont* factor, we consider the similarity or dissimilarity in the trade channels in which the respective goods and services are marketed and,

relatedly, the similarity or dissimilarity in the classes of purchasers of the goods and services.  As set forth in the application, applicant's association services are offered and rendered to or on behalf of "active members of the United States Army, National Guard, reservists, civilians, retirees and family members."  Applicant's website similarly notes that its events and meetings "are open to all AUSA [applicant] members, employees or consultants of AUSA Member companies, military and civilian government personnel, invited guests of the Association and others who have an identifiable relationship with the U.S. Army."  The website also states that

> AUSA Family Programs Directorate works on behalf of Army families through installation visits, information gathering, supporting family readiness activities and hosting Military Family Forums.  If you have a question or concern about Army family issues that you feel AUSA should address, please let us know.

We find that these various users and beneficiaries of applicant's association services are the same as, or overlap with, the purchasers and users of the goods and services identified in the cited registrations, including active military members, reservists, civilians and military family members.  Such persons, "who have an identifiable relationship with the U.S. Army," are likely to be among

21

the users or beneficiaries of the Class 35 and 42 educational and career related services recited in the '479 and '969 registrations, as well as being users of the Class 9 career education software identified in the '619 registration. There are no limitations or restrictions in the cited registrations as to the trade channels and classes of purchasers for the identified goods and services, and we therefore must presume that those goods and services are offered in all normal trade channels and to all normal classes of purchasers for such goods and services. *In re Elbaum*, 211 USPQ 639 (TTAB 1981). These would include the same trade channels as those in which applicant's services are marketed, and would include the same classes of purchasers, i.e., current, former and potential members of the United States Army, as well as their families and others with a relationship to the United States Army.

For these reasons, we find that the trade channels and classes of purchasers for the respective goods and services at issue herein are related, and that the third *du Pont* factor weighs in favor of a finding of likelihood of

confusion.

## Conditions of Purchase/Sophistication of Purchasers

The fourth *du Pont* factor requires us to consider conditions of purchase, including sophistication of purchasers. We cannot agree with applicant's contention that all of the relevant purchasers of the goods and services at issue here necessarily are careful and knowledgeable as to the existence, *vel non*, of a source, sponsorship, or other affiliation between applicant's services and the United States Army. The persons using applicant's services include active and retired service members, some of whom might understand that applicant's services are not formally associated with or approved by the United States Army. In this regard, we note that applicant has submitted form declarations from thirteen of its members which read as follows:

> I, _____, have been a member since ___ of the Association of the United States Army ("AUSA"), a private, non-profit educational organization that supports active military, reserves, retirees and their family members.
> I understand, and at all times during my membership and in the membership process I understood, that AUSA is an organization that is separate and distinct from the United States Army and the federal agency of the United States known as the Department of the Army. I do not now believe, and at no time during my membership or

> in the membership process did I believe, AUSA to be connected to, affiliated with or sponsored, endorsed or approved by the United States Army or the federal agency of the United States known as the Department of the Army. I also recognize that the AUSA logo comprising a perched eagle with a leaf and torch crest and the wording ASSOCIATION OF THE UNITED STATES ARMY points directly to, and uniquely identifies, AUSA and its services and distinguishes such services in commerce.

However, we cannot conclude from these declarations that <u>all</u> of the military personnel who would be members or potential members of applicant's organization (including young new recruits) necessarily would understand that there is no actual relationship between the United States Army and an organization that calls itself the Association of the United States Army. Moreover, the users and potential users of applicant's services include civilians and family members. We find that these ordinary persons, upon encountering applicant's services rendered under its mark, are likely to be confused as the existence of a source, sponsorship or other affiliation between applicant and registrant.

Applicant also contends that the "purchasers" of its association services include members of Congress, before whom applicant performs lobbying on behalf of military personnel and their families and who assertedly would be

24

readily aware of the relationship between applicant and the United States Army. We cannot agree that members of Congress are among the purchasers of applicant's services; applicant renders its association services to members of the association. The knowledge or understanding that members of Congress may have with respect to applicant's relationship with the United States Army is not probative evidence on the question of whether applicant's members and potential members are likely to be confused by applicant's use of a mark which includes the words OF THE UNITED STATES ARMY. Moreover, even if we were to treat members of Congress as "purchasers" of applicant's association services who might tend to be knowledgeable, the fact remains that, as we have stated, applicant's purchasers also include persons who would not necessarily be discriminating or aware of the nature of applicant's relationship to the U.S. Army.

For these reasons, we find that the fourth *du Pont* factor weighs in favor of a finding of likelihood of confusion. At the least, we cannot say that this factor

25

weighs heavily in applicant's favor.


**Absence of Actual Confusion**

The next *du Pont* factors at issue in this case are the seventh and eighth factors, which pertain to the issue of actual confusion. The seventh factor requires us to consider evidence pertaining to "the nature and extent of any actual confusion." The eighth factor requires us to consider evidence pertaining to "the length of time during and conditions under which there has been concurrent use without evidence of actual confusion."

We find under the seventh *du Pont* factor that there is no evidence of actual confusion in this case.[9]

---

[9] We will assume for purposes of this decision that the absence of evidence of actual confusion is, in fact, due to the absence of any actual confusion among purchasers, and not due to other factors. For example, we will not assume that the absence of evidence of actual confusion is due to the possibility that applicant's services have been of sufficiently high quality that purchasers have had no reason to complain to applicant or registrant regarding the services, or to inquire as to the source of the services. *See In re Richard Bertram & Co.*, 203 USPQ 286, 291 (TTAB 1979). Likewise, we will not assume that the absence of evidence of actual confusion is due to the possibility that, if applicant's members have not inquired as to the existence of any source relationship between applicant and registrant, it is because they already (mistakenly) assume that applicant is using the designation UNITED STATES ARMY in its mark pursuant to an agreement or arrangement with the United States Army, and with the United States Army's permission. *See In re Opus One Inc.*, 60 USPQ2d 1812 (TTAB 2001). Finally, we will assume the truth of applicant's unsupported contention (in its brief) that registrant has never informed applicant of any instances of actual confusion known to registrant.

However, the seventh and eighth *du Pont* factors are interrelated; the absence of evidence of actual confusion, under the seventh *du Pont* factor, by itself is entitled to little weight in our likelihood of confusion analysis unless there also is evidence, under the eighth *du Pont* factor, that there has been a significant opportunity for actual confusion to have occurred. *See In re Continental Graphics Corp.*, 52 USPQ2d 1374 (TTAB 1999); *Gillette Canada Inc. v. Ranir Corp.*, 23 USPQ2d 1768 (TTAB 1992). This is especially so in an ex parte case. "A showing of actual confusion would of course be highly probative, if not conclusive, of a high likelihood of confusion. The opposite is not true, however. The lack of evidence of actual confusion carries little weight, especially in an *ex parte* context." *In re Majestic Distilling Co., Inc.*, 315 F.3d 1311, 1317, 65 USPQ2d 1201, 1205 (Fed. Cir. 2003)(internal citation omitted). *See also In re Opus One Inc.*, *supra*, 60 USPQ2d at 1817 (TTAB 2001); *In re Jeep Corp.*, 222 USPQ 333 (TTAB 1984); and *In re Barbizon International, Inc.,* 217 USPQ 735 (TTAB 1983).

Although the absence of evidence of actual confusion generally carries little weight in an ex parte case, *see In re Majestic Distilling Co., Inc., supra*, the Board has recognized that there may be an exception to this general

27

rule where there is shown to be a "confluence of facts" which together strongly suggest, under the eighth *du Pont* factor, that the absence of evidence of actual confusion is meaningful and should be given probative weight in an ex parte case. *See In re Opus One Inc., supra; In re General Motors Corp.*, 23 USPQ2d 1465 (TTAB 1992).

We find in this case that applicant has established the existence of the requisite "confluence of facts" under the eighth *du Pont* factor and *In re General Motors Corp., supra.* Specifically, the evidence (including the declaration of Lt. Gen. Rhame) shows that applicant has co-existed with and interacted with registrant for over fifty years without any apparent actual confusion, and that during that time applicant's headquarters, like registrant's headquarters, has been located in the Washington, D.C. metropolitan area.

We find that this evidence of long-time concurrent use of the marks in the same geographic area suffices to establish, under the eighth *du Pont* factor, that the absence of evidence under the seventh *du Pont* factor is legally significant and entitled to some weight in our likelihood of confusion analysis in this ex parte case. We therefore find that the seventh and eighth *du Pont* factors

weigh in applicant's favor and against a finding of likelihood of confusion.

**Implied Consent**

In further support of its contention that confusion is unlikely, applicant argues that registrant has impliedly consented "to the use by Applicant of Applicant's logo." (Applicant's brief at 7.) We deem this argument to fall under the tenth *du Pont* factor, i.e., the market interface between applicant and registrant. *See In re Opus One Inc., supra*.

In support of its argument, applicant relies on the declaration of its vice-president, Lt. Gen. Rhame, who avers, inter alia, as follows:

> In performing its duties as an association promoting the interests of U.S. Army personnel, AUSA interacts closely with the U.S. Army. For example, the Secretary of the Army provided the opening speech at AUSA's annual meeting on October 3, 2005. Other officials attending and addressing the meeting during October 3-5 included the Army Chief of Staff and Sergeant Major and Vice President Dick Cheney. Such interaction and communication between AUSA and the U.S. Army has been in existence for decades. Likewise, the U.S. Army has long been aware of AUSA's activities and services and the use of AUSA's identifying mark that is the subject of this application. Based on my experience in the U.S. Army and with AUSA, I am not aware of any instance when the Army objected to, in any way,

> AUSA's service mark or its use of the wording "Association of the United States Army."

Based on this declaration, applicant argues that applicant and the United States Army have been in close communication and interaction for decades, that the United States Army therefore obviously is aware of applicant's long use of its mark, and that despite such awareness the United States Army has never objected to, and therefore impliedly consents to, applicant's use of its mark. We are not persuaded.

Even assuming, as applicant contends, that the United States Army consents to applicant's <u>use</u> of its mark, there is nothing in the record from which we might infer that the United States Army also consents to applicant's <u>registration</u> of the mark. *See In re Thomas*, 79 USPQ2d 1021 (TTAB 2006). Indeed, there is no evidence that the United States Army is even aware that applicant has applied to register the mark*. See In re Opus One Inc., supra.* If, as applicant contends, the United States Army in fact consents to applicant's registration of the mark,

> there is available to applicant in a future application a type of evidence which, under *du Pont* and subsequent case law, is entitled to great weight in the likelihood of confusion analysis, i.e., a valid consent agreement between

30

applicant and registrant.  The evidence of record applicant relies on in the present case simply does not suffice as a substitute for such an agreement.  We have given that evidence due consideration, but conclude that the tenth *du Pont* evidentiary factor, i.e., the "market interface" between applicant and registrant, does not weigh in applicant's favor to any significant degree in this case.

*In re Opus One Inc., supra*, 60 USPQ2d at 1822.  We deem this observation to be equally applicable in the present case.

**LIKELIHOOD OF CONFUSION – CONCLUSION**

We have carefully reviewed all of the evidence of record as it pertains to the relevant *du Pont* factors, and we have carefully considered all of applicant's arguments with respect thereto.  We conclude that although the absence of evidence of actual confusion weighs in applicant's favor under the seventh and eighth *du Pont* factors, that fact is not dispositive in this case.  Rather, we find that the absence of actual confusion is outweighed, in our likelihood of confusion analysis, by the evidence of record pertaining to the other *du Pont* factors.  *See On-line Careline Inc. v. America Online Inc*., 229 F.3d 1080, 56 USPQ2d 1471 (Fed. Cir. 2000).

Specifically, the marks are quite similar in terms of connotation and overall source-indicating commercial impression.  Applicant's services are similar and related to the goods and services identified in the cited registrations.  The respective goods and services move in overlapping trade channels and are marketed to overlapping classes of purchasers, not all of whom are necessarily sophisticated or would be immune to source confusion arising from the similarity of the marks and of the goods and services.

For the reasons discussed above, we find, upon balancing the *du Pont* factors, that a likelihood of confusion exists between applicant's mark as applied to its services and each of the cited registered marks as applied to the goods and/or services identified therein.  To the extent that any doubts might exist as to the correctness of this conclusion, we resolve such doubts against applicant. *See In re Shell Oil Co.,* 992 F.2d 1204, 26 USPQ2d 1687 (Fed. Cir. 1993); *In re Hyper Shoppes (Ohio) Inc.,* 837 F.2d 840, 6 USPQ2d 1025 (Fed. Cir. 1988); and *In re Martin's Famous Pastry Shoppe, Inc., supra.*

Decision:  The refusal to register is affirmed.