## In re MAJESTIC DISTILLING COMPANY, INC.

Nos. 02–1243, 74,622,781.

United States Court of Appeals, Federal Circuit.

Jan. 2, 2003.

---

William G. Pecau, Pennie & Edmonds LLP, of New York, NY, argued for appellant. With him on the brief was Carol M. Wilhelm.

Linda Moncys Isacson, Associate Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Arlington, VA, argued for appellee. With her on the brief were John M. Whealan, Solicitor; and Cynthia C. Lynch, Associate Solicitor.

Before NEWMAN, LOURIE, and SCHALL, Circuit Judges.

LOURIE, Circuit Judge.

Majestic Distilling Company, Inc. appeals from the decision of the United States Patent and Trademark Office ("PTO") Trademark Trial and Appeal Board ("TTAB" or "Board") affirming the examining attorney's refusal to register the mark "RED BULL" for tequila. *In re Majestic Distilling Co.*, Serial No. 74/622,-781, Paper No. 22 (TTAB Nov. 29, 2001). The Board held that the examining attorney correctly refused registration on the basis of likelihood of confusion with previously registered "RED BULL" marks for malt liquor. We affirm.

## BACKGROUND

Majestic seeks to register the mark "RED BULL" for tequila. Despite having asserted use in commerce since November 1, 1984, Majestic did not file its application for registration until January 18, 1995. In a first Office Action mailed August 10, 1995, the examining attorney refused registration of the mark under § 2(d) of the Lanham Act, 15 U.S.C. § 1052(d) (2000), on the ground of likelihood of confusion with Registration No. 1,071,580 ("RED BULL" for Scotch whiskey), issued August 16, 1977, to George Willsher & Co., Ltd.; Registration No. 1,542,792 ("RED BULL A SCHLITZ MALT LIQUOR BRAND" for malt liquor), issued June 6, 1989, to The Stroh Brewery Company; and Registration No. 1,541,794 (stylized "RED BULL" for malt liquor), issued May 30, 1989, also to Stroh. *Office Action,* Serial No. 74/622,781 (Aug. 10, 1995). The examining attorney also cited four of Stroh's pending applications for registration, Serial Nos. 74/541,371, 74/541,372,

74/589,654, and 74/589,656, against Majestic's application. *Id.*

After petitioning to cancel Willsher's mark for Scotch whiskey on the ground of abandonment, Majestic responded to the Office Action. Finding Majestic's response unpersuasive, however, the examining attorney made his refusal final. *Office Action,* Serial No. 74/622,781 (June 6, 1996). Majestic then appealed to the Board. *In re Majestic Distilling Co.,* Serial No. 74/622,781 (TTAB Apr. 15, 1997).

While Majestic's appeal was pending, Willsher's mark was canceled and Stroh's four pending applications matured into registrations. At the examining attorney's request, the Board remanded the case to him. *Id.,* slip op. at 1. He then issued another non-final Office Action, in which he refused registration of Majestic's mark not only over the '580, '792, and '794 registrations, but also over Stroh's newly matured registrations: Registration No. 1,923,974 ("RED BULL" with design for malt liquor), issued from Serial No. 74/589,656 on October 3, 1995; Registration No. 1,935,272 ("RED BULL" for malt liquor), issued from Serial No. 74/589,654 on November 14, 1995; Registration No. 2,046,277 ("RED BULL REPRESENTIN' THE REAL" for brewed malt liquor), issued from Serial No. 74/541,371 on March 18, 1997; and Registration No. 2,046,278 ("RED BULL REPRESENTIN' " for brewed malt liquor), issued from Serial No. 74/541,372 on March 18, 1997. *Office Action,* Serial No. 74/622,781 (Apr. 23, 1997).

Majestic made several unsuccessful attempts to traverse the examining attorney's refusal to register its mark, but the examining attorney again made his refusal final. *Office Action,* Serial No. 74/622,781 (Mar. 15, 2000). Majestic again appealed to the Board, which affirmed the examining attorney's second final refusal. *In re Majestic Distilling Co.,* Serial No. 74/622,-

781 (TTAB Nov. 29, 2001). Majestic now appeals to this court. We have jurisdiction pursuant to 15 U.S.C. § 1071 and 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

■■■ Under § 2(d) of the Lanham Act, the PTO may refuse to register a trademark if it "so resembles" a previously registered mark "as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d) (2000). We review a determination of likelihood of confusion as a question of law based on findings of relevant underlying facts. *Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.,* 748 F.2d 669, 671, 223 USPQ 1281, 1282 (Fed.Cir.1984). Although we review the Board's ultimate legal conclusion *de novo, In re Int'l Flavors & Fragrances, Inc.,* 183 F.3d 1361, 1365, 51 USPQ2d 1513, 1515 (Fed.Cir. 1999), we review the Board's underlying findings of fact under the substantial evidence standard. *On–Line Careline Inc. v. Am. Online Inc.,* 229 F.3d 1080, 1085, 56 USPQ2d 1471, 1474 (Fed.Cir.2000). Thus, we ask whether a reasonable person might find that the evidentiary record supports the Board's conclusion. *Id.* at 1085, 229 F.3d 1080, 56 USPQ2d at 1475. When reviewing for substantial evidence, we take the entire record into account, including evidence that detracts from an agency's finding as well as evidence that justifies it. *Id.* at 1086, 229 F.3d 1080, 56 USPQ2d at 1475. The possibility that inconsistent conclusions may be drawn from the same record does not render a Board's finding unsupported by substantial evidence. *Id.; In re Gartside,* 203 F.3d 1305, 1312, 53 USPQ2d 1769, 1773 (Fed.Cir.2000).

■■■ We determine likelihood of confusion by focusing on the question whether the purchasing public would mistakenly as-

sume that the applicant's goods originate from the same source as, or are associated with, the goods in the cited registrations. *Paula Payne Prods. Co. v. Johnson Publ'g Co.*, 473 F.2d 901, 902, 177 USPQ 76, 77 (CCPA 1973). We make that determination on a case-by-case basis, *On–Line Careline*, 229 F.3d at 1084, 56 USPQ2d at 1474, aided by the application of the factors set out in *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). Those factors are:

(1) The similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation, and commercial impression.

(2) The similarity or dissimilarity and nature of the goods ... described in an application or registration or in connection with which a prior mark is in use.

(3) The similarity or dissimilarity of established, likely-to-continue trade channels.

(4) The conditions under which and buyers to whom sales are made, i.e. "impulse" v. careful, sophisticated purchasing.

(5) The fame of the prior mark....

(6) The number and nature of similar marks in use on similar goods.

(7) The nature and extent of any actual confusion.

(8) The length of time during and the conditions under which there has been concurrent use without evidence of actual confusion.

(9) The variety of goods on which a mark is or is not used....

(10) The market interface between the applicant and the owner of a prior mark....

(11) The extent to which applicant has a right to exclude others from use of its mark on its goods.

(12) The extent of potential confusion....

(13) Any other established fact probative of the effect of use.

*Id.* at 1361, 476 F.2d 1357, 177 USPQ at 567. Not all of the *DuPont* factors may be relevant or of equal weight in a given case, and "any one of the factors may control a particular case," *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1406–07, 41 USPQ2d 1531, 1533 (Fed.Cir.1997).

■ Both the examining attorney and the Board applied the relevant *DuPont* factors to the facts of the present case. With regard to the first factor, they found that one of Stroh's registered marks, Reg. No. 1,935,272, is identical to Majestic's applied-for mark. They also found that a second registration, Reg. No. 1,541,794, is almost identical to Majestic's mark, but for the use of stylized lettering in the former. As pointed out by the examining attorney, because the drawing for Majestic's mark is in typed format and hence can potentially be represented in any manner, that stylized lettering does not provide a significant difference between the marks. We have previously held that, when word marks are identical but neither suggestive nor descriptive of the goods associated with them, the first *DuPont* factor weighs heavily against the applicant, *In re Martin's Famous Pastry Shoppe, Inc.*, 748 F.2d 1565, 1566, 223 USPQ 1289, 1290 (Fed.Cir.1984), and "even when goods or services are not competitive or intrinsically related, the use of identical marks can lead to the assumption that there is a common source," *In re Shell Oil Co.*, 992 F.2d 1204, 1207, 26 USPQ2d 1687, 1689 (Fed.Cir. 1993).

The Board found that, if marketed under the identical mark, consumers would be likely to believe that malt liquor and tequila emanate from, or are sponsored or endorsed by, the same entity. Majestic

argues against the Board's finding, asserting that malt liquor and tequila are unrelated. First, Majestic argues, malt liquor is a brewed product, whereas tequila is distilled. Secondly, the PTO's evidence of a relationship between malt liquor and tequila consists only of (1) articles demonstrating that malt liquor and tequila are occasionally found in some of the same places and (2) articles relating to Anheuser–Busch's Tequiza, a tequila-flavored beer.

The PTO responds, and we agree, that malt liquor and tequila are similar by virtue of the fact that both are alcoholic beverages that are marketed in many of the same channels of trade to many of the same consumers. Although the PTO apparently found no evidence of any manufacturer who both brews malt liquor and distills tequila, Majestic has not shown that the PTO's lack of evidence in that regard is relevant. Unless consumers are aware of the fact, if it is one, that no brewer also manufactures distilled spirits, that fact is not dispositive. The *DuPont* factors require us to consider only "trade channels," which may be, but are by no means necessarily, synonymous with manufacturing channels. In this case, Majestic has not demonstrated that consumers distinguish alcoholic beverages by manufacturer rather than brand name. Because substantial evidence supports the Board's conclusions that malt liquor and tequila are similar goods and are sold in many of the same established and likely-to-continue trade channels, we conclude that the second and third *DuPont* factors, respectively, weigh against Majestic, as well as the first.

The fourth *DuPont* factor seems to us to be a close question. On the one hand, the Board found that malt liquor and tequila are both relatively inexpensive products that are likely to be purchased on impulse rather than selected with careful, studied consideration and sophistication. As we have held in the past, "[w]hen the products are relatively low-priced and subject to impulse buying, the risk of likelihood of confusion is increased because purchasers of such products are held to a lesser standard of purchasing care." *Recot Inc. v. M.C. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1899 (Fed.Cir. 2000). On the other hand, Majestic's response that common experience suggests that "beer drinkers and drinkers of distilled spirits are extremely, and often fiercely, brand-conscious and discriminating" also has some merit. Still, Majestic has provided no survey data or evidence other than Stroh's identification of consumers of its products as "reasonably intelligent and discerning" to support its argument, and it is unclear in any event that evidence of such brand-consciousness would even favor Majestic. First, even if Majestic were correct that "common experience" shows that consumers sometimes become attached to a particular brand of beer or spirits after purchasing and consuming that brand at least once, that would say little, if anything, about whether the consumer's *initial selection* of that brand was based on studied consideration and sophistication or, alternatively, on impulse. Secondly, it appears to us that brand-consciousness not only can be expected to lead a consumer who already has a favorite brand of tequila to be loyal to that brand, but it also should compel a consumer who enjoys "RED BULL"-brand malt liquor but has not yet developed a taste for a particular brand of tequila to purchase "RED BULL"-brand tequila in the mistaken belief that it is manufactured or sponsored by the same entity. It seems to us that that is precisely the mistake that § 2(d) of the Lanham Act seeks to prevent. To be sure, a side-by-side comparison of the two products' labels would probably dispel the mistake

for most consumers. It is doubtful, however, that such a comparison would be undertaken prior to purchase of these relatively inexpensive products.

Thus, we can hardly say that the PTO's finding with respect to the fourth factor is lacking in substantial evidence. We will not upset the Board's conclusion, based on its balancing of the evidence, that these goods are more likely than not purchased on impulse.

■ Although the Board did not evaluate the fifth *DuPont* factor, Majestic argues that Stroh's "RED BULL" marks for malt liquor are not famous marks with decades of prior use, and that the present case can accordingly be distinguished from cases such as *Schieffelin & Co. v. Molson Cos.*, 9 USPQ2d 2069 (TTAB 1989); *In re Leslie Hennessy, Jr.*, 226 USPQ 274 (TTAB 1985); and *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 136 USPQ 508 (9th Cir.1963), which were cited by the Board. However, we find no evidence in the record to substantiate Majestic's counsel's argument that Stroh's marks are not famous. Even if such evidence were of record, though, it would have little probative value. Although we have previously held that the fame of a registered mark is relevant to likelihood of confusion, *DuPont*, 476 F.2d at 1361, 177 USPQ at 567 (factor five), we decline to establish the converse rule that likelihood of confusion is precluded by a registered mark's not being famous.

■ With regard to the seventh *DuPont* factor, we agree with the Board that Majestic's uncorroborated statements of no known instances of actual confusion are of little evidentiary value. *See In re Bissett–Berman Corp.*, 476 F.2d 640, 642, 177 USPQ 528, 529 (CCPA 1973) (stating that self-serving testimony of appellant's corporate president's unawareness of instances of actual confusion was not conclusive that actual confusion did not exist or that there

was no likelihood of confusion). A showing of actual confusion would of course be highly probative, if not conclusive, of a high likelihood of confusion. The opposite is not true, however. The lack of evidence of actual confusion carries little weight, *J.C. Hall Co. v. Hallmark Cards, Inc.*, 52 C.C.P.A. 981, 340 F.2d 960, 964, 144 USPQ 435, 438 (CCPA 1965), especially in an *ex parte* context.

Majestic's principal challenge appears to focus on the sixth, eighth, and tenth *DuPont* factors. First, Majestic asserts that other companies have marketed distilled spirits under the trade name "RED BULL" without any incidents of actual confusion over the course of the sixteen years that it has been selling its "RED BULL" tequila. Secondly, Majestic points to evidence showing that, over a twelve-year period, Stroh not only argued before the PTO that the "RED BULL" mark can be used concurrently for its malt liquor and others' distilled spirits without creating confusion, but also entered into agreements with George Willsher & Co., Ltd., which, as noted above, had registered "RED BULL" for Scotch whiskey, and Red Bull GmbH, which Majestic alleges manufactures "RED BULL" gin, vodka, brandy spirits, and wine. According to Majestic, the Board and the examining attorney improperly discredited the objective evidentiary value of the agreements among Stroh, Willsher, and Red Bull GmbH, as those agreements reflect the opinions of persons most familiar with the actual trade and marketing practices surrounding the goods and marks at issue, and "[d]ecisions of men who stand to lose if wrong are normally more reliable than those of examiners and judges." (quoting *DuPont*, 476 F.2d at 1363, 177 USPQ at 569).

As the Board and the examining attorney have pointed out, however, there has

been no consent agreement executed between Majestic and Stroh, only between Stroh and third parties. The record appears to be silent as to whether Majestic ever attempted to negotiate an agreement with Stroh, but, in any event, we agree that no presumption can be made that Stroh consents to Majestic's use of the mark or that Stroh has determined or admits that confusion of the public by Majestic's concurrent use of the mark is unlikely. Moreover, the Stroh agreements with Willsher and Red Bull GmbH are several years old and may not reflect current views. For example, Stroh may now have knowledge of incidents of actual confusion, and may no longer hold the same view with respect to likelihood of confusion as it did when it executed those third-party agreements or when it argued to the PTO that there was no likelihood of confusion. Moreover, the consent agreements between Stroh and the third parties contain express limitations; in particular, the Willsher Stroh agreement prohibits Stroh's use or registration of "BLACK BULL" or "THE MAGNIFICENT BULL" for brewed malt liquor, beer, or ale, even though Willsher apparently uses those marks only on Scotch whiskey.

Majestic invited the PTO to simply pass its mark to publication so that Stroh could oppose the mark if it saw fit to do so. The PTO properly turned down Majestic's request. The appellant in *Dixie Restaurants* raised essentially the same argument, 105 F.3d at 1408, 41 USPQ2d at 1535, and we held in that case that:

> [I]t is the duty of the PTO and this court to determine whether there is a likelihood of confusion between two marks. *In re Apparel, Inc.*, 54 C.C.P.A. 733, 366 F.2d 1022, 1023, 151 USPQ 353, 354 (CCPA 1966). It is also our duty "to afford rights to registrants without constantly subjecting them to the financial and other burdens of opposition proceedings." *Id.; see also In re Clorox*

*Co.*, 578 F.2d 305, 308, 198 USPQ 337, 341 (CCPA 1978); McCarthy, [*McCarthy on Trademarks and Unfair Competition* ] § 23.24[1][d] (where PTO rejects an application under section 1052(d), "it is no answer for the applicant to ask that the application be passed to publication to see whether the owner of the cited mark will oppose the registration"). Otherwise protecting their rights under the Lanham Act would be an onerous burden for registrants.

*Id.*

Majestic also argues that it is the senior user and, as such, its "decision ... not to petition to cancel Stroh's registrations, or to sue Stroh to stop its use of the RED BULL trademark, is significant evidence that confusion is not likely." In support of its position, Majestic cites *Bongrain International (American) Corp. v. Delice de France, Inc.*, 811 F.2d 1479, 1 USPQ2d 1775 (Fed.Cir.1987), for the proposition that "conduct of a prior user in not objecting to subsequent use of a similar mark by another is objective evidence to be considered when determining likelihood of confusion." It is unclear where Majestic derived that paraphrase, because the only statement in *Bongrain* that relates to objections raised by a prior user is: "As the prior user, Delice would be the one to object to the use and registration of Bongrain's mark. It has never objected to the use and, notwithstanding this cancellation proceeding, it has not seriously objected to its registration." *Id.* at 1485, 1 USPQ2d at 1779. That statement merely shows that Delice's actions were consistent with a belief that no likelihood of confusion existed. Neither that statement nor any other in *Bongrain*, however, suggests to us that the inaction of a prior user is "objective evidence to be considered when determining likelihood of confusion."

In any event, the Board's decision in the present case is not in conflict with our decision in *Bongrain,* for there are at least three critical distinctions that can be drawn between the facts in *Bongrain* and those in this case. First, unlike in the present case, there was an agreement executed *between the parties to the suit* in *Bongrain,* governing the uses of the respective marks. *Id.* at 1482, 811 F.2d 1479, 1 USPQ2d at 1776. Secondly, the products in connection with which the marks at issue in *Bongrain* were to be used were significantly different from each other (*i.e.,* milk and cheese on one hand, and baked goods on the other). *Id.* at 1481, 811 F.2d 1479, 1 USPQ2d at 1776. Third, the court in *Bongrain* distinguished *DuPont,* which, as here, involved identical marks, on the basis that the marks (*i.e.,* "DELICE DE FRANCE" and "LE PETIT DELICE DE FRANCE"), although similar, were not identical. *Id.* at 1483, 811 F.2d 1479, 1 USPQ2d at 1777. Thus, whereas in *Bongrain* we held that it was "not necessary, in view of cumulative differences between the marks and the goods enumerated, to hold that confusion is likely," we hold that, in view of the *similarities* between the marks and the goods enumerated in the present case, we see no error in the Board's conclusion that confusion is likely.

We also agree with the Board that Majestic's decision not to avail itself of the statutory provisions for opposition and cancellation before Stroh's marks became incontestable could have been made for any number of business reasons unrelated to the likelihood of confusion between the marks, and is not entitled to any significant weight. Although prior use can be relevant to the questions whether a party can enjoin another's use of a mark, whether and where a party has a right to use a mark after the same mark is registered by another party for use in connection with the same goods or services, and whether a party can successfully oppose or petition to cancel another party's registration, it is not one of the *DuPont* factors and does not directly bear on likelihood of confusion. Several of the *DuPont* factors contain the phrase "the prior mark," but it is clear from their context that that phrase refers to a prior *registered* mark and not simply to a prior *used* mark. In any event, vindication of Majestic's asserted position of priority is more appropriately raised in proceedings designed to evaluate such a position.

Neither the Board nor either party has raised arguments that relate to any of the ninth, eleventh, twelfth, and thirteenth *DuPont* factors, and we therefore do not discuss them.

In summary, we find no fault in the Board's affirmance of the examining attorney's refusal to register Majestic's mark. The Board found, on the basis of substantial evidence, that Majestic's mark is identical to at least one of the previously registered marks, that malt liquor and tequila are related as alcoholic goods sold through the same trade channels to many of the same consumers, and that malt liquor and tequila are both fairly inexpensive and likely to be purchased on impulse. Although Majestic's principal arguments are not without merit, analysis under *DuPont* requires a balancing of the relevant factors, and we find the balance in this case tilts towards a likelihood of confusion. *See Dixie Rests.,* 105 F.3d at 1407, 41 USPQ2d at 1533 ("We see no error in the board's decision to focus on the *DuPont* factors it deemed dispositive.").

We have considered Majestic's other arguments and find them unpersuasive.

## CONCLUSION

Substantial evidence supports the Board's findings. On the basis of those findings, we agree with the Board's conclu-

sion that consumers who are aware of Stroh's "RED BULL" malt liquor and who then encounter Majestic's "RED BULL" tequila are likely to mistakenly believe that both come from or are sponsored or licensed by the same entity. Accordingly, the Board's decision is

*AFFIRMED.*