THIS DISPOSITION IS
NOT CITABLE AS PRECEDENT
OF THE TTAB

Mailed: January 28, 2004

Paper No. 13
BAC

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Mannington Mills, Inc.
_____

Serial No. 76196495
_____

Sherry H. Flax of Saul Ewing LLP for Mannington Mills, Inc.

Samuel E. Sharper, Jr., Trademark Examining Attorney, Law Office 108 (David Shallant, Managing Attorney).
_____

Before Seeherman, Chapman and Bottorff, Administrative Trademark Judges.

Opinion by Chapman, Administrative Trademark Judge:

Mannington Mills, Inc. (a New Jersey corporation) filed an application on January 19, 2001, to register on the Principal Register the mark GUARDIAN for goods ultimately amended to read as follows: "reinforced vinyl polymer comprising a component of vinyl floor covering" in International Class 27. The application is based on

applicant's claimed date of first use and first use in commerce of October 2000.

Registration has been refused under Section 2(d) of the Trademark Act, 15 U.S.C. §1052(d), on the ground that applicant's mark, when applied to its identified goods, so resembles the registered mark GUARDIAN for "carpets, carpet squares and floor covering" in International Class 27,[1] as to be likely to cause confusion, mistake or deception.

When the refusal was made final, applicant appealed. Briefs have been filed, but applicant did not request an oral hearing.

We affirm the refusal to register. In reaching this conclusion, we have followed the guidance of the Court in In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). See also, In re Majestic Distilling Company, Inc., 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003).

The involved marks are identical. This fact "weighs heavily against applicant." In re Martin's Famous Pastry Shoppe, Inc., 748 F.2d 1565, 223 USPQ 1289, 1290 (Fed. Cir. 1984). Indeed, the fact that an applicant has selected the

---

[1] Registration No. 1355589, issued August 20, 1985 on the Principal Register, Section 8 affidavit accepted, Section 15 affidavit acknowledged.

identical mark of a registrant "weighs [so] heavily against the applicant that applicant's proposed use of the mark on "goods...[which] are not competitive or intrinsically related [to registrant's goods]...can [still] lead to the assumption that there is a common source." In re Shell Oil Co., 992 F.2d 1204, 26 USPQ2d 1687, 1688-1689 (Fed. Cir. 1993). "The greater the similarity in the marks, the lesser the similarity required in the goods or services of the parties to support a finding of likelihood of confusion." 3 J. McCarthy, McCarthy on Trademarks and Unfair Competition, §23:20.1 (4th ed. 2001).

We turn to a consideration of the cited registrant's goods and applicant's goods. Applicant's position is that "there are sufficient differences between the goods and channels of trade that confusion is unlikely." (Brief, p. 2.) Specifically, applicant argues that the item "floor coverings" in the registrant's goods is not an acceptable identification of goods and is too broad; that registrant's goods are carpet and carpet squares, while applicant's goods are a component of vinyl flooring; and that "the fact that Applicant's and Registrant's goods are related to flooring does not mean, absent supporting evidence, that

these products would be regarded by prospective purchasers as coming from or sponsored by the same source." (Brief, p. 3.)

The Examining Attorney contends that the goods are closely related as the registrant's identification of goods includes "floor coverings," which encompasses vinyl floor coverings, and applicant's goods are a component of vinyl floor covering;[2] that both applicant's and registrant's goods are each used "to cover floors, applied to flooring and used with flooring" (brief, p. 6); that there is no restriction in either identification of goods as to trade channels and purchasers; and that the issue is not whether consumers can distinguish between the goods, but whether there is a likelihood of confusion as to the source of the goods.

In support of his position, the Examining Attorney submitted evidence in the form of printouts of (i) several third-party registrations and (ii) various Internet web

---

[2] The Examining Attorney correctly points out that applicant's assertion that "floor coverings" is an unacceptable identification of goods is an impermissible attack on the validity of this aspect of the cited registration. See 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, §23:80 (4th ed. 2001).

sites, all showing that the same entity (including applicant) offers both carpet and vinyl flooring.

It is well settled that goods (or services) need not be identical or even competitive to support a finding of likelihood of confusion, it being sufficient that the goods (or services) are related in some manner or that the circumstances surrounding their marketing are such that they would likely be encountered by the same persons under circumstances that could give rise to the mistaken belief that they emanate from or are associated with the same source. See In re Peebles Inc., 23 USPQ2d 1795, 1796 (TTAB 1992); and In re International Telephone and Telegraph Corporation, 197 USPQ 910 (TTAB 1978).

In reviewing the identification of goods as well as applicant's specimens, it is clear that applicant's product is a component of and a selling feature of applicant's own vinyl flooring products. The label specimen is shown below.



In applicant's brochure there is a section titled "Frequently Asked Questions About GUARDIAN." Some examples follow:

> Q. Are Guardian products as heavy and hard to handle as the competition?
> A. No. The products with Guardian Innercore™ are only slightly heavier than our existing products.
>
> Q. Will products with Guardian cost more?
> A. No. Mannington will not add a price premium for this performance enhancement.
>
> Q. Will all Mannington products have the Guardian Innercore?
> A. Initially, three products will be manufactured with Guardian: Vega III™, Cornerstone™ and Luminesse™. By the fall, the remaining Mannington product

> offerings from Bronze through Platinum
> will be offered with this performance
> feature.

Further, in the brochure, applicant promotes its goods as "tough Innercore construction," "guaranteed not to rip, tear, gouge or permanently indent" and "protects against bottom-up staining and moisture." Applicant's component product is used within its own goods, which are offered to the general public. Thus, this record shows that the ultimate consumers will definitely come into contact with applicant's mark for its component of vinyl flooring. In addition, applicant's materials show that this component is promoted to such purchasers. In effect, applicant's goods are sold in the same channels of trade and promoted to the same purchasers as vinyl flooring.

Applicant's component of vinyl flooring is closely related to the "floor coverings" identified in registrant's registration, since "floor coverings" include vinyl coverings. Moreover, even if we consider only the "carpets" and "carpet squares" identified in registrant's registration, we find that the third-party registrations and Internet evidence submitted by the Examining Attorney demonstrates a sufficient relatedness between applicant's and registrant's goods to support a finding of likelihood of confusion. Thus, we find that the goods in the cited

registration (which include "floor coverings") and applicant's goods (a component in vinyl floor covering) are related goods.

There is no restriction as to trade channels or purchasers in either identification of goods and, as explained above, the record shows that applicant's component product is marketed to the general public. The evidence shows that the goods travel in the same channels of trade to the same classes of purchasers, namely, the public at large.

Regarding the du Pont factor of the fame of the prior mark, applicant asserts that the cited mark is not famous. In general, fame does not play a role in ex parte appeals because evidence to demonstrate fame is not available to Examining Attorneys. Although evidence of fame can be dispositive in finding likelihood of confusion, the absence of such evidence does not compel a result of no likelihood of confusion. In this case, the various du Pont factors on which we do have evidence persuade us that confusion is likely.

Applicant argues that "GUARDIAN is a common term subject to wide use as a mark" and there are "dozens of registered marks comprised of the term GUARDIAN, and dozens more that include the term GUARDIAN" (brief, p. 3); that

8

there are two registrations which include GUARDIAN in International Class 27 (Registration No. 1144318 for the mark GUARDIAN STEP (STEP disclaimed) for "safety mats" and the cited registered mark) and one abandoned application; and that the "term GUARD appears in dozens of registrations for floor covering and related goods in International Class 27. [Applicant's list of five registration numbers omitted]." (Brief, p. 4.)

Applicant did not provide copies of the single third-party registration for a GUARDIAN-component mark (GUARDIAN STEP) or of the five registrations for GUARD marks, and the Board does not take judicial notice of registrations. Thus, the probative value of this evidence is extremely limited. See In re Smith and Mehaffey, 31 USPQ2d 1531 (TTAB 1994); Weyerhaeuser Co. v. Katz, 24 USPQ2d 1230 (TTAB 1992); and In re Duofold Inc., 184 USPQ 638 (TTAB 1974). Of course, the abandoned application has virtually no probative value on the issue of registrability, as it is evidence only of the fact that the application was filed.

To the extent that applicant is arguing that the cited mark is weak, we point out that there is only a single third-party registration for a mark which includes the word GUARDIAN and, further, that third-party registrations are not evidence that the marks shown therein are in use. See

9

Olde Tyme Foods Inc. v. Roundy's Inc., 961 F.2d 200, 22 USPQ2d 1542 (Fed. Cir. 1992).

**Decision:** The refusal to register under Section 2(d) is affirmed.