THIS OPINION IS A
PRECEDENT OF THE TTAB

Hearing:                                    Mailed:
August 11, 2011                             March 19, 2012

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Hartz Hotel Services, Inc.
_____

Serial No. 76692673
_____

Robert G. Shepherd of Porzio Bromberg & Newman, P.C. for Hartz Hotel Services, Inc.

Martha L. Fromm, Trademark Examining Attorney, Law Office 106 (Mary I. Sparrow, Managing Attorney).
_____

Before Seeherman, Bergsman and Shaw, Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

Hartz Hotel Services, Inc. ("applicant") filed an intent-to-use application to register the mark GRAND HOTELS NYC, in standard character form, for "hotel services," in Class 43. Applicant disclaimed the exclusive right to use the term "Hotels NYC." Also, applicant claimed ownership of the following registrations:

1. Registration No. 2613367 for the mark GRAND HOSPITALITY for "hotel services." Applicant disclaimed the exclusive right to use the word "hospitality";

2.    Registration No. 2943561 for the mark GRAND BAR & LOUNGE for "restaurant and bar services."[1]  Applicant disclaimed the exclusive right to use the term "Bar & Lounge"; and

3.    Registration No. 3481069 for the mark ChelseaGrandHotel.com for "reservation services, namely, making reservations for lodging."

The Trademark Examining Attorney refused, under Section 2(d) of the Trademark Act of 1946, 15 U.S.C. § 1052(d), to register applicant's mark on the ground that applicant's mark is likely to cause confusion with the registered mark GRAND HOTEL, in typed drawing form, for "hotel and restaurant services," in Class 42.[2]  Registrant disclaimed the exclusive right to use the word "Hotel." The Examining Attorney also refused registration pursuant to Section 2(d) in view of Registration No. 1325324[3] for the mark GRAND HOTEL, with HOTEL disclaimed, registered for a variety of goods and services (e.g., soap and shampoos, note pads, tote bags, towels, luggage service, and golfing

---

[1] Applicant made a typographical error in its ownership claim. Applicant claimed ownership of 2943531, which is for the mark CLEVELAND COTTON PRODUCTS for "wiping cloths" owned by The Tranzonic Companies, instead of Registration No. 294361.  The Board has corrected this error and has had the correct registration entered into the Office database.
[2] Registration No. 1250067, issued August 30, 1983; renewed.
[3]  Issued March 19, 1985; renewed.

and recreational swim services).  Both registrations are owned by the same party.

The appeal has been fully briefed, and applicant and the examining attorney appeared at an oral hearing.

Our determination of likelihood of confusion under Section 2(d) is based on an analysis of all of the probative facts in evidence that are relevant to the factors bearing on the issue of likelihood of confusion. *In re E. I. du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973).  *See also, In re Majestic Distilling Company, Inc.,* 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003).

We concentrate our analysis on the likelihood of confusion with Registration No. 1250067 since that registration is for the same services as those identified in applicant's application.  If we find that confusion is likely between applicant's mark and the mark in this registration, and that the refusal on this basis should be affirmed, there is no need for us to consider the issue of likelihood of confusion with Registration No. 1325324.  If we do not find likelihood of confusion with respect to the mark in this registration for identical services, then there would be no likelihood of confusion with respect to a registration for goods and services that are not identical.

Serial No. 76692673

*See In re Max Capital Group Ltd.,* 93 USPQ2d 1243, 1245 (TTAB 2010).

A.   <u>The similarity or dissimilarity and nature of the services described in the application and registration, channels of trade and classes of consumers</u>.

As indicated above, applicant is seeking to register GRAND HOTELS NYC for "hotel services" and the recitation of services in the cited registration is "hotel and restaurant services." Thus, the recitations of services are in part identical. Because the services are in part identical, we must presume that the channels of trade and classes of purchasers are the same. *See In re Thor Tech Inc.,* 90 USPQ2d 1634, 1639 (TTAB 2009); *In re Smith and Mehaffey,* 31 USPQ2d 1531, 1532 (TTAB 1994) ("Because the goods are legally identical, they must be presumed to travel in the same channels of trade, and be sold to the same class of purchasers."). *See also In re Viterra Inc.,* ___ F.3d ___, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (even though there was no evidence regarding channels of trade and classes of consumers, the Board was entitled to rely on the this legal presumption in determining likelihood of confusion).

B.   <u>The strength of the registered mark, the number and nature of similar marks in use in connection with similar services, and the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression</u>.

4

The word "Grand" is defined as follows:

> 1. impressive in size, appearance or general effect: *grand mountain scenery*. 2. stately, majestic, or dignified: *In front of an audience her manner is grand and regal.* … 4. magnificent or splendid: *a grand palace.* … 11. first-rate; very good; splendid: *to have a grand time; to feel grand.*[4] (Emphasis in the original).

Thus, when "grand" is used in connection with "hotel," the resulting mark GRAND HOTEL indicates an impressive, stately, magnificent or first-rate hotel.

Because GRAND HOTEL has been registered, it is entitled to a presumption of validity by Section 7(b) of the Trademark Act of 1946, 15 U.S.C. § 1057(b) (*i.e.,* a certificate of registration is prima facie evidence of the validity of the registered mark and of the registration of the mark, of the ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration). Thus, the registered mark GRAND HOTEL cannot be treated as merely descriptive; we must consider the mark to be at worst highly suggestive because it is a

---

[4] The American Heritage Dictionary of the English Language (Unabridged), p. 829 (2nd ed. 1987). The Board may take judicial notice of dictionary evidence. *University of Notre Dame du Lac v. J. C. Gourmet Food Imports Co.,* 213 USPQ 594, 596 (TTAB 1982), *aff'd,* 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

laudatory term as shown by the third-party registrations, evidence of third-party use discussed *infra*, and the dictionary definitions set forth above.

Applicant submitted copies of the **five** registrations listed below for marks, each owned by a different entity, that incorporate the term "Grand Hotel," or in one case, "Grande Hotel," for "hotel services."[5]

| Registration No. | Mark |
|---|---|
| | |
| 2930876 | THE GRAND HOTEL AT MOUNTAINEER<br>Registrant disclaimed the exclusive right to use "Hotel" |
| | |
| 2596891 | THE SOUTH'S GRAND HOTEL<br>Registrant disclaimed the exclusive right to use "The South's" and "Hotel" |
| | |
| 2585077 | ANCHORAGE GRAND HOTEL and design<br>Registrant disclaimed the exclusive right to use "Anchorage Grand Hotel" |
| | |
| 3023113 | LOUISVILLE'S GRAND HOTEL<br>The registration issued under Section 2(f) (acquired distinctiveness with respect to "LOUISVILLE'S GRAND); registrant disclaimed the exclusive right to use "Hotel" |

---

[5] We do not consider the four (4) cancelled registrations submitted by applicant. A cancelled registration is not entitled to any of the presumptions of Section 7(b) of the Trademark Act. *See, e.g., In re Hunter Publishing Co.,* 204 USPQ 957, 963 (TTAB 1979) (cancellation "destroys the Section [7(b)] presumptions and makes the question of registrability 'a new ball game' which must be predicated on current thought.").

| Registration No. | Mark |
|---|---|
| | |
| 3239284 | FORT LAUDERDALE GRANDE HOTEL & YACHT CLUB and design<br>Registrant disclaimed the exclusive right to use "Fort Lauderdale" and "Hotel and Yacht Club" |

In addition, applicant submitted copies of Registration No. 2191860 for the mark SOHO GRAND HOTEL and Registration No. 2705826 for the mark TRIBECA GRAND HOTEL, both for hotel services, registered under the provisions of Section 2(f) and with a disclaimer of the exclusive right to use the word "Hotel."  These registrations are owned by two different companies that are related to applicant.

In its June 26, 2009 response, applicant submitted the declaration of Robert Goldkind, a private investigator, who confirmed the use of the following "Grand/Grande Hotel" marks through personal contact:

1.   The Grande Hotel at Mountaineer in Chester, West Virginia;

2.   Kyoto Grand Hotel and Gardens in Los Angeles, California;

3.   Geiser Grand Hotel in Baker City, Oregon;

4.   Wilshire Grand Hotel in Los Angeles, California;

5.   The South's Grand Hotel in Memphis, Tennessee;[6]

---

[6] The official name of this establishment is The Peabody Memphis but The South's Grand Hotel is an unofficial name.  The operator answered the telephone by saying "The Peabody Memphis:  The South's Grand Hotel."

7

6.   Anchorage Grand Hotel in Anchorage, Alaska; and

7.   Bellissimo Grande Hotel in North Stonington, Connecticut.

Finally, in its February 1, 2010 response, applicant submitted copies of websites advertising the services of the companies listed below which are offered under marks incorporating the term "Grand Hotel":

1.  MGM Grand Hotel & Casino

2.  The Grand Hotel Minneapolis

3.  The Grand Hotel Ocean City

4.  The Grand Hotel at Bridgeport also referencing the Phoenix Grand Hotel and the Grand Hotel Salem

5.  The Grand Hotel (Silicon Valley)

6.  The Grand Hotel Cape May

7.  North Conway Grand Hotel

8.  Pensacola Grand Hotel

9.  The Grand Hotel Waterloo

10.  Jerome Grand Hotel

The websites for Nos. 1-3, 6, 8 and 9 provide information identifying owners other than the registrant of the cited registration.  The websites for Nos. 4, 5, 7 and 10 did not identify the owners.

In *Plus Products v. Natural Organics, Inc.,* 204 USPQ 773 (TTAB 1979), which involved an opposition to the registration of NATURE'S PLUS for vitamins by the owner of

the mark PLUS, also for vitamins, the applicant made of record eight third-party registrations that issued prior to opposer's registration and seven registrations that issued after, all for marks containing the word PLUS and all for goods that are the same or closely related to vitamins. The Board drew the following inferences from the co-existence of these registrations:

1.    Opposer was satisfied to register PLUS side-by-side with eight existing registrations.

2.    The Patent and Trademark Office has historically registered PLUS marks for vitamins to different parties so long as there has been some difference, not necessarily created by a distinctive word, between the marks as a whole, e.g., VITAMINS PLUS and IRON PLUS.

3.    A number of different trademark owners have believed, over a long interval of time, that various PLUS marks can be used and registered side by side without causing confusion provided there are minimal differences between the marks.

*Id. at 779; see also Jerrold Electronics Corp. v. The Magnavox Company,* 199 USPQ 751, 758 (TTAB 1978) (third-party registrations "reflect a belief, at least by the registrants, who would be most concerned about avoiding

confusion and mistake, that various 'STAR' marks can coexist provided that there is a difference."); *In re Sien Equipment Co.,* 189 USPQ 586, 588 (TTAB 1975) (the suggestive meaning of the word "Brute" explains the numerous third-party registrations incorporating that word with other wording or material no matter how little additional significance they may add to the word "Brute" *per se*).

Because of the highly suggestive nature of the term "Grand Hotel," the third-party registrations, and the evidence of third-party use of marks incorporating the term "Grand Hotel," we think that the same inferences apply in the present case. It is clear from the third-party registrations that the addition of a geographic location to the word GRAND HOTEL has been sufficient for the Patent and Trademark Office to view these marks as being sufficiently different from the cited registrant's mark, and from each other, such as not to cause confusion. We presume that the owner of the cited registration did not have a problem with the registration of these third-party marks, as they all issued after the registration of the cited registrant's registration without challenge by the registrant.

Moreover, the numerous third-party uses of GRAND HOTEL marks for hotel services tend to confirm these inferences,

10

and to show that consumers distinguish between these marks even though the only distinguishing element is a geographically descriptive term.  Therefore, unlike a situation involving an arbitrary or fanciful mark, the addition of other matter to a laudatory or suggestive word may be enough to distinguish it from another mark.  *In re Hunke & Jocheim,* 185 USPQ 188, 189 (TTAB 1975).

> It seems both logical and obvious to us
> that where a party chooses a trademark
> which is inherently weak, he will not
> enjoy the wide latitude of protection
> afforded the owners of strong
> trademarks.  Where a party uses a weak
> mark, his competitors may come closer
> to his mark than would be the case with
> a strong mark without violating his
> rights.  The essence of all we have
> said is that in the former case there
> is not the possibility of confusion
> that exists in the latter case.

*Sure-Fit Products Company v. Saltzson Drapery Company*, 254 F.2d 158, 117 USPQ 295, 297 (CCPA 1958).  Under these circumstances, marks comprising the term "Grand Hotel" in connection with hotel services should be accorded a narrow scope of protection.

Keeping this in mind, we find in this case that the marks are sufficiently different to avoid the likelihood of confusion.  We recognize that applicant's mark GRAND HOTELS NYC differs from the cited mark GRAND HOTEL by only the inclusion of the geographic term NYC and the pluralization

11

of HOTEL, and that such differences have been found in other cases insufficient to distinguish two marks for identical services. *See Wilson v. Delaunay,* 245 F.2d 877, 114 USPQ 339 (CCPA 1957) (ZOMBIE for candy is likely to cause confusion with ZOMBIES for a candy-like confection in the nature of a macaroon).

However, given the fact that third-party registrations for hotel services have issued for marks which differ from the registrant's by only the inclusion of a geographic indicator, and without objection by the registrant, it would appear that the registrant itself considers the inclusion of a geographic indicator to be sufficient to distinguish the marks. As we have already found, the mark GRAND HOTEL is highly suggestive, and therefore the scope of protection to which the cited registration is entitled is quite limited. In this regard, the Board has made the following observation:

> The question involved in this proceeding is what measure of protection should be afforded a mark like "ROYAL." It is settled that, unlike in the case of arbitrary or unique designations, suggestive or highly suggestive terms, because of their obvious connotation and possible frequent employment in a particular trade as a part of trade designations, have been considered to fall within the category of "weak" marks, and the scope of protection afforded these marks have

12

been so limited as to permit the use and/or registration of the same mark for different goods or of a composite mark comprising this term plus other matter, whether such matter be equally suggestive or even descriptive, for the same or similar goods. The term "ROYAL", because of its obvious laudatory suggestive connotation, has been considered by various tribunals to be a "weak" mark entitled to a narrow orbit of protection in determining the question of the likelihood of confusion. [Internal citations omitted]. As stated in Peerless Electric Company v. Peerless Electric, Inc., supra [103 USPQ 283 (NY Sup. Ct., 1954)].

"There are certain names which are given different tags- descriptive, laudatory, or the like- which are technically known as 'weak,' meaning that an exclusive right in them is hard to obtain. Such names as 'Superior,' 'Majestic,' and 'Royal' are so common that the use in and of itself imports nothing * * *."

The character of the term "ROYAL" and the limited orbit of protection to be afforded such a term is clearly revealed by the third-party registrations made of record by applicant. That is, they are indicative that this Office has, over the years, treated "ROYAL" as a "weak" mark that could not be exclusively appropriated in the food field thereby permitting the registration of "ROYAL", per se, to different entities for different food products and composite marks containing this term for like goods on the basis that there is no likelihood of confusion as to source.

*Standard Brands Incorporated v. Peters,* 191 USPQ 168, 172 (TTAB 1976). *See also Glamorene Products Corp. v. Earl Grissmer Co., Inc.,* 203 USPQ 1090, 1097 (TTAB 1978) ("Both marks [RINSENVAC and SPRAY 'N VAC] are highly suggestive of their products and this only enhances the association of each mark with its own goods").

Likewise, viewing the marks GRAND HOTEL and GRAND HOTELS NYC in the context of the facts and circumstances presented by the record in this case, we find that the addition of NYC to applicant's mark is sufficient to render applicant's mark distinguishable from the mark in the cited registration. In other words, in this case, the strength or weakness of the mark in the cited registration is the most important factor. *See, e.g., Kellogg Co. v. Pack-Em Enterprises Inc.*, 951 F.2d 330, 21 USPQ2d 1142, 1145 (Fed. Cir. 1991) ("We know of no reason why, in a particular case, a single *duPont* factor may not be dispostive. … 'each [of the thirteen elements] may from case to case play a dominant role.'"). Because of the highly suggestive nature of the mark "Grand Hotel," the proliferation of registered "Grand Hotel" marks and the unregistered uses of "Grand Hotel" marks, the mark "Grand Hotel," itself, is entitled to only a very narrow scope of protection or exclusivity of use. Further, because of the highly suggestive nature of

14

GRAND HOTEL and the number of third-party GRAND HOTEL marks, we conclude that consumers are able to distinguish between different GRAND HOTEL marks based on small differences in the marks, including the addition of a geographic term.  Accordingly, we find that applicant's mark GRAND HOTELS NYC for hotel services is not likely to cause confusion with Registration No. 1250067 for GRAND HOTEL for hotel services.  In view of this finding, applicant's mark also is not likely to cause confusion with the mark in Registration No. 1325324.

**Decision**:  The refusal to register is reversed.