This Opinion Is a
Precedent of the TTAB

Mailed: September 23, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re C. H. Hanson Company*

_____

Serial No. 77983232

_____

David A. Gottardo,
    for C. H. Hanson Company.

Meghan Reinhart, Trademark Examining Attorney, Law Office 108,
    Andrew Lawrence, Managing Attorney.

_____

Before Taylor, Adlin, and Hightower,
    Administrative Trademark Judges.

Opinion by Hightower, Administrative Trademark Judge:

C. H. Hanson Company ("Applicant") seeks registration on the Principal

Register of the mark C.H. HANSON (in standard characters) for:

> "Hand tools, namely, chalk line reels; Hand tools, namely,
> squares; Hand-operated sharpening tools and
> instruments; Hand-operated tin snips; Pliers; Snips," in
> International Class 8.[1]

_____

[1] Application Serial No. 77983232, based on Applicant's claim of first use anywhere and in commerce since at least as early as December 4, 1998, and with a claim of acquired distinctiveness under Trademark Act Section 2(f). On September 17, 2012, this "child" application was divided from parent application Serial No. 77754790, filed June 8, 2009. The parent application, containing goods in Classes 6, 9, 16, and 17, is not subject to the present refusal to register and is not otherwise before us.

The Trademark Examining Attorney refused registration under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), on the ground that Applicant's mark, as used in connection with its goods, so resembles the mark HANSON, previously registered in standard characters on the Principal Register for:

> "Die taps and die sets, taps and tap sets, all the foregoing for use with machine tools," in International Class 7; and

> "Hand tools, namely, wrenches, and accessories for wrenches, namely, die taps and die sets, taps and tap sets," in International Class 8,[2]

as to be likely to cause confusion, to cause mistake, or to deceive.

After the Examining Attorney made the refusal final, Applicant appealed to this Board, and an oral hearing was held on February 18, 2015.

We affirm the refusal to register.

Our determination under Section 2(d) is based on an analysis of all probative facts in evidence that are relevant to the factors bearing on the issue of likelihood of confusion. *In re E. I. du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973); *see also In re Majestic Distilling Co.,* 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003). In any likelihood of confusion analysis, however, two key considerations are the similarities between the marks and the similarities between the goods. *See Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental inquiry mandated by § 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks.").

---

[2] Registration No. 3593636, issued March 24, 2009; combined declaration of use and incontestability under Trademark Act Sections 8 and 15 accepted and acknowledged.

## I. Similarity of the Marks

We first consider the *du Pont* likelihood of confusion factor focusing on "the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation, and commercial impression." *Palm Bay Imports Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005) (quoting *du Pont*, 177 USPQ at 567). "The proper test is not a side-by-side comparison of the marks, but instead 'whether the marks are sufficiently similar in terms of their commercial impression' such that persons who encounter the marks would be likely to assume a connection between the parties." *Coach Servs. Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012) (citation omitted). The focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks. *Joel Gott Wines LLC v. Rehoboth Von Gott Inc.*, 107 USPQ2d 1424, 1430 (TTAB 2013).

Because the similarity or dissimilarity of the marks is determined based on the marks in their entireties, our analysis is not predicated on dissecting the marks into their various components. *In re Nat'l Data Corp.,* 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985); *see also Franklin Mint Corp. v. Master Mfg. Co.,* 667 F.2d 1005, 212 USPQ 233, 234 (CCPA 1981) ("It is axiomatic that a mark should not be dissected and considered piecemeal; rather, it must be considered as a whole in determining likelihood of confusion."). On the other hand, there is nothing improper in stating that, for rational reasons, more or less weight has been given to a

particular feature of a mark, provided the ultimate conclusion rests on a consideration of the marks in their entireties. *In re Nat'l Data*, 224 USPQ at 751.

The cited mark is HANSON. Applicant's mark is C.H. HANSON. Applicant's mark thus differs from the cited mark only by the added initials C.H. Applicant's mark gives the appearance of a reference to an individual with the first and middle initials C.H. and the surname HANSON.[3] The mere addition of C.H. to the registered mark HANSON does not obviate the similarity between the marks because consumers would be likely to believe that the marks HANSON and C.H. HANSON refer to the same person. *See, e.g.*, *In re Chatham Int'l Inc.*, 380 F.3d 1340, 71 USPQ2d 1944, 1946 (Fed. Cir. 2004) (JOSE GASPAR GOLD confusingly similar to GASPAR'S ALE); *Harry Winston, Inc. v. Bruce Winston Gem Corp.*, 111 USPQ2d 1419, 1446-47 (TTAB 2014) (BRUCE WINSTON confusingly similar to WINSTON); *In re SL&E Training Stable Inc.*, 88 USPQ2d 1216, 1219 (TTAB 2008) (SAM EDELMAN confusingly similar to EDELMAN); *Somerset Distilling Inc. v. Speymalt Whisky Distribs. Ltd.*, 14 USPQ2d 1539, 1542 (TTAB 1989) (JAS. GORDON confusingly similar to GORDON'S). The marks thus are similar in appearance, sound, and meaning, and make highly similar commercial impressions.

We are unpersuaded by Applicant's arguments that HANSON is inherently weak as a common surname, and that third-party registrations incorporating the term HANSON for goods different than those before us here have coexisted.[4] There

---

[3] The application includes a statement that the name shown in the mark does not identify a particular living individual.

[4] *See* Appeal Brief at 11-12, 4 TTABVUE 12-13.

is no record evidence of any third-party use of marks incorporating the term HANSON for goods similar to those at issue from which we could conclude that consumers would distinguish Applicant's mark based on its minor differences from the cited mark. Even had the third-party registrations Applicant submitted identified similar goods, they are not evidence of what happens in the marketplace or that the public is familiar with the use of the subject marks. *See Smith Bros. Mfg. Co. v. Stone Mfg. Co.,* 476 F.2d 1004, 177 USPQ 462, 463 (CCPA 1973); *Carl Karcher Enters. Inc. v. Stars Rests. Corp.,* 35 USPQ2d 1125, 1130-31 (TTAB 1995).

In view of the similarity between the marks HANSON and C.H. HANSON, the first *du Pont* factor weighs strongly in favor of a likelihood of confusion.

## II. Similarity of the Goods

We turn next to the second *du Pont* factor, the similarity of the goods. It is not necessary that the goods be identical or even competitive to support a finding of likelihood of confusion. Rather, it is sufficient that the goods are related in some manner, or that the circumstances surrounding their marketing are such that they would be encountered by the same persons in situations that would give rise, because of the marks, to a mistaken belief that they originate from the same source or that there is an association or connection between the sources of the goods. *In re Thor Tech Inc.,* 90 USPQ2d 1634, 1635 (TTAB 2009). The greater the degree of similarity between the marks, the lesser the degree of similarity between the goods necessary to support a finding of likelihood of confusion. *In re Opus One Inc.,* 60 USPQ2d 1812, 1815 (TTAB 2001).

The goods identified in the subject application and the cited registration are:

| Registrant's Goods | Applicant's Goods |
|---|---|
| Hand tools, namely, wrenches, and accessories for wrenches, namely, die taps and die sets, taps and tap sets (Class 8) | Hand tools, namely, chalk line reels; Hand tools, namely, squares; Hand-operated sharpening tools and instruments; Hand-operated tin snips; Pliers; Snips (Class 8) |
| Die taps and die sets, taps and tap sets, all the foregoing for use with machine tools (Class 7) | |

In both its appeal and reply briefs, Applicant lists Registrant's Class 8 goods as "wrenches and accessories for wrenches, namely, die taps and die sets, taps and tap sets," omitting the initial and crucial words "Hand tools, namely,"[5] as well as the comma following "wrenches" the first time it appears. It is Applicant's position that the cited registration identifies only specialized, not common, "wrenches." Applicant argues that the words "Hand tools, namely, wrenches," in the absence of a semicolon after "wrenches," merely modify registrant's remaining Class 8 goods: "and accessories for wrenches, namely, die taps and die sets, taps and tap sets."[6] Applicant contends that "wrenches" alone is an indefinite term, and so "the punctuation should be interpreted as limiting Registrant's wrenches to the drives and stocks related to its taps and dies."[7]

---

[5] Appeal Brief at 6, 4 TTABVUE 7; Reply Brief at 4, 9 TTABVUE 5.

[6] Specifically, Applicant argued in its reply brief and at oral hearing that because a comma is used after the first listing of "wrenches," "the word wrenches of the Registrant's goods identification has a 'complimentary [sic] relationship' with the taps and dies recited therein and respectfully should be interpreted as such." *See* Reply Brief at 6, 9 TTABVUE 7 (citing FOWLER'S MODERN ENGLISH USAGE 162 ¶ 5 (rev. 3d ed. 1998), 10 TTABVUE).

[7] Reply Brief at 7, 9 TTABVUE 8.

Applicant submitted what it characterized as a brochure of Registrant's "illustrating the description of specialized 'wrenches' as 'drives' and 'stocks,'" arguing: "As any consumer in the tool marketplace would recognize, Registrant's 'wrench' is a specialized tool used solely to rotate taps and dies to create internal or external threads on a piece of metal."[8] The cover of the document Applicant made of record is shown below.[9]



It is established beyond peradventure that our analysis of the second *du Pont* factor must be based on a comparison of the goods identified in the application and the cited registration, respectively, not on extrinsic evidence of actual use. *E.g.*,

---

[8] Appeal Brief at 5-6, 4 TTABVUE 6-7.

[9] January 12, 2012 Response to Office Action at 14.

*Coach Servs. Inc. v. Triumph Learning LLC*, 101 USPQ2d at 1722; *Octocom Sys., Inc. v. Houston Computer Servs. Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990). When identifications are technical or vague and require clarification, it is appropriate to consider extrinsic evidence of use to determine the meaning of the identification of goods. *See, e.g., Edwards Lifesciences Corp. v. VigiLanz Corp.*, 94 USPQ2d 1399, 1410 (TTAB 2010); *In re Trackmobile*, 15 USPQ2d 1152, 1154 (TTAB 1990).

Here, the description "hand tools, namely, wrenches" is neither vague nor technical and does not require clarification through extrinsic evidence. We note that "Hand tools, namely, wrenches" are listed in Class 8 in the USPTO's Trademark Acceptable Identification of Goods and Services (Trademark ID Manual). We also take judicial notice of the following dictionary definitions of the noun "wrench":

- "a hand or power tool for holding, twisting, or turning an object (as a bolt or nut)"[10]

- "a tool for gripping and turning or twisting the head of a bolt, a nut, a pipe, or the like, commonly consisting of a bar of metal with fixed or adjustable jaws."[11]

- "Any of various hand or power tools, often having fixed or adjustable jaws, used for gripping, turning, or twisting objects such as nuts, bolts, or pipes, typically at an angle perpendicular to the object's axis."[12]

---

[10] Merriam-Webster online dictionary (2015) (m-w.com). The Board may take judicial notice of dictionary definitions, including online dictionaries that exist in printed format or have regular fixed editions. *In re Cordua Rests. LP*, 110 USPQ2d 1227, 1229 n.4 (TTAB 2014).

[11] Dictionary.com Unabridged, based on the Random House Dictionary (2015).

[12] The American Heritage Dictionary of the English Language (Houghton Mifflin 2011) (from CredoReference.com).

We find that Registrant's identification "Hand tools, namely, wrenches, and accessories for wrenches, namely, die taps and die sets, taps and tap sets" includes ordinary "wrenches." Moreover, Registrant's identification is presumed to encompass all goods of the type described, including all "wrenches" that are "hand tools." *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 719 F.3d 1367, 107 USPQ2d 1167, 1173 (Fed. Cir. 2013). Therefore, we find that Registrant's identification is not limited to specialized tools known as "drives" and "stocks" used solely with taps and dies.[13]

As the Trademark Examining Attorney correctly notes, Trademark Manual of Examining Procedure § 1402.01(a) (July 2015) merely states general rules for the use of commas and semicolons. Although the better practice would have been to separate the categories of wrenches and accessories for wrenches with a semicolon, *see In re Midwest Gaming & Entm't LLC*, 106 USPQ2d 1163, 1166 & n.4 (TTAB 2013) (finding that semicolon separates services into discrete categories), here the comma followed by the word "and" after "Hand tools, namely, wrenches" nevertheless separates those goods from the "die taps and die sets, taps and tap sets" modifying "accessories for wrenches." To the extent that Registrant's use of a comma rather than a semicolon creates ambiguity as to the scope of the identification of goods, and we do not believe that it does, we must resolve any doubt in favor of the registrant, given the presumptions afforded the registration

---

[13] To the extent Applicant argues that registrant does not offer the goods commonly known as "wrenches" under its HANSON mark, this argument constitutes an impermissible collateral attack on the validity of the cited registration. *See In re Dixie Rests. Inc.*, 105 F.3d 1405, 41 USPQ2d 1531, 1534 (Fed. Cir. 1997).

under Section 7(b), 15 U.S.C. § 1057(b). *In re Pellerin Milnor Corp.*, 221 USPQ 558, 559 (TTAB 1983); 4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 24:64 (4th ed. September 2015) ("Any ambiguity as to whether the goods covered by a cited registration could overlap with the goods identified by applicant will be resolved in favor of the prior registrant.").

It is sufficient for a finding of likelihood of confusion if relatedness is established for any item encompassed by the identification of goods within a particular class in an application. *Tuxedo Monopoly, Inc. v. General Mills Fun Group*, 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981). The Examining Attorney made of record Internet evidence demonstrating that both wrenches and tap and die sets on the one hand, and goods identified by Applicant on the other hand, emanate from the same sources of hand tools under the same mark, including the following:

- Wrenches, tap and die sets, pliers, and tin snips all sold under the mark MASTER MECHANIC;[14]

- Wrenches, tap and die sets, pliers, and squares all sold under the CRAFTSMAN mark;[15] and

- Wrenches, tap and die sets, and pliers all sold under the mark KOBALT.[16]

In each of these three instances, tap and die sets are offered at prices starting under $40, which does not support Applicant's argument that these types of goods are highly specialized, purchased by sophisticated buyers who shop with care.[17]

---

[14] July 11, 2011 Office Action at 54, 103-06 (from TrueValue.com).

[15] *Id.* at 61-64 (from Craftsman.com).

[16] *Id.* at 81-85 (from Lowes.com).

[17] *See* Appeal Brief at 10-11, 4 TTABVUE 11-12.

The following additional Internet evidence also demonstrates that wrenches and Applicant's identified goods emanate from the same source under a single mark:

- Wrenches and chalk reel kits, squares, pliers and snips all sold under the DEWALT mark;[18]

- Wrenches and pliers sold under the HUSKY mark, and wrenches and tin snips sold under the KLEIN mark;[19] and

- Wrenches and chalk line reels, pliers, and squares all sold under the STANLEY mark.[20]

Also of record are at least five existing, use-based third-party registrations for both wrenches and goods identified in the application, as follows:

- and PIONEER for goods including wrenches and chalk line reels, hand-operated sharpening tools and instruments, squares, tin snips, and pliers;[21]

- for "a full line of hand tools, namely, squares, chalk line reels ... snips ... manually operated sharpeners ... pliers ... wrenches";[22]

- for goods including "Hand tools, namely, ... wrenches; ... Hand-operated sharpening tools and instruments;"[23] and

- for hand tools including wrenches, pliers, and hand-operated sharpening tools and instruments.[24]

---

[18] July 11, 2011 Office Action at 65-68 (from DeWalt.com).

[19] *Id.* at 76-79 (from HomeDepot.com).

[20] *Id.* at 98-101 (from StanleyTools.com).

[21] Registration Nos. 3659669 and 3659670, September 13, 2009 Office Action at 58-63.

[22] Registration No. 3625318, October 8, 2012 Office Action at 8-11.

[23] Registration No. 4126830, *id.* at 20-23.

[24] Registration No. 4199865, *id.* at 23-25.

Although these registrations are both limited in number and not evidence that the marks shown therein are in use or that the public is familiar with them, they nonetheless have probative value to the extent they serve to suggest that the identified goods are of a kind which are produced or marketed by a single source under a single mark. *See In re Anderson*, 101 USPQ2d 1912, 1919 (TTAB 2012); *In re Davey Prods. Pty. Ltd.*, 92 USPQ2d 1198, 1203 (TTAB 2009). In this case, we find that these third-party use-based registrations, considered in conjunction with the Internet evidence, support the conclusion that the goods are related.

For all of these reasons, we find that the respective goods are related. The second *du Pont* factor therefore weighs in favor of a finding of likelihood of confusion between Applicant's mark and the mark in the cited registration.

## III.    Conclusion

We treat any *du Pont* factors for which there is no record evidence as neutral. In view of our findings under the critical first two *du Pont* factors that the marks are highly similar and the identified goods are related, we find that Applicant's mark is likely to cause confusion with the mark in cited Registration No. 3593636 when used in association with Applicant's goods.

**Decision**: The refusal to register Applicant's mark C.H. HANSON is affirmed.