THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed: June 30, 2016

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

Terry Nazon, d/b/a Terry Nazon Inc.
v.
Charlotte Ghiorse

_____

Opposition No. 91216729
to application Serial No. 85972929

_____

Matthew H. Swyers of The Trademark Company for Terry Nazon.

Paulo A. De Almeida of Patel & Almeida PC for Charlotte Ghiorse.

_____

Before Seeherman, Bergsman and Pologeorgis, Administrative Trademark Judges.

Opinion by Seeherman, Administrative Trademark Judge:

Terry Nazon (Opposer), an individual doing business as Terry Nazon Inc., has opposed the application of Charlotte Ghiorse (Applicant), an individual, to register SEXY ASTROLOGY, in standard characters and with ASTROLOGY disclaimed, as a mark for "astrology consultation" in Class 45.[1] The opposition

---

[1] Application Serial No. 85972929, filed June 28, 2013 on the Principal Register, asserting first use on December 20, 2007 and first use in commerce on January 3, 2008.

is based on Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d). Specifically, Opposer pleads ownership of a Supplemental Register registration for SEXSTROLOGY for services in the nature of "astrology horoscopes" in International Class 45;[2] that this registration "maintains" dates of first use and first use in commerce of at least as early as January 21, 2003; that Opposer acquired rights in her mark prior to Applicant's acquiring rights in her mark; and that Applicant's use of her mark for her services is likely to cause confusion with Opposer's mark and registration.

In her answer, Applicant admitted the allegations that Opposer is the owner of her pleaded Registration No. 4110430 for the mark SEXSTROLOGY, and that the registration "maintains" the aforesaid dates of first use; that Opposer's mark was registered on March 6, 2012; that Applicant applied for the mark which is the subject of this opposition; and that Applicant is a U.S. resident with a mailing address in Brooklyn, New York. Applicant otherwise denied the remaining allegations in the notice of opposition. Applicant also asserted, as affirmative defenses, that Opposer's mark "SEXTROLOGY" [sic] is merely descriptive, and has only been allowed registration on the Supplemental Register; that the mark is not distinctive, and is merely descriptive and possibly generic, as the term "Sextrology" [sic][3] refers to

---

[2] Registration No. 4110430 issued on March 6, 2012 on the Supplemental Register.

[3] In her answer Applicant uses the term "Sextrology," rather than "Sexstrology," when referring to Opposer's mark. Applicant has used the spellings interchangeably, e.g., in her brief she makes the statement, "[Opposer] refers to this type of astrology as SEXTROLOGY, or the "astrology of sex," citing page 9 of Opposer's deposition, although the transcript of the deposition uses the spelling "sexstrology." Applicant's

astrological predictions as they pertain to individuals' sexual predilections, while Applicant's mark is distinctive and eligible for registration on the Principal Register. Applicant also made specific denials with respect to the claim of likelihood of confusion, in particular, asserting that her mark is not confusingly similar to Opposer's mark, that the parties' services are directed to different trade channels and different consumers, that there is no evidence or allegation of any actual confusion, and that Applicant adopted her mark in good faith and without any intent to confuse the public.

The record includes the pleadings; the file of the opposed application; the testimony, with exhibits, of Opposer, Terry Nazon, and of Applicant, Charlotte Ghiorse; and Applicant's notice of reliance, which includes Opposer's pleaded registration and documents from the registration file, printouts from various websites, and Opposer's responses to Applicant's interrogatories and requests for admission.[4]

---

brief, 13 TTABVUE 8. The interchangeable references to "sextrology" and "sexstrology" are apparently due to typographical errors, rather than an intent to make a distinction between the two terms.

Record citations are to TTABVUE, the Trademark Trial and Appeal Board's publically available docket history system, by entry and page number. *See Turdin v. Trilobite, Ltd.*, 109 USPQ2d 1473, 1476 n.6 (TTAB 2014).

[4] We note that at page 97 of Ms. Nazon's testimony her counsel said he wanted to "designate this portion of the record as confidential and attorneys' eyes only of course, you know, not to be for public eyes. It would have to be redacted out of the public transcript." 10 TTABVUE 100. Subsequently he stated that "we can come off the confidential part of this transcript." *Id.* at 102. However, when Opposer's counsel filed Ms. Nazon's testimony, he did not submit any pages under seal, or submit a redacted copy for public view. It would appear that subsequent to the taking of her testimony deposition Opposer decided not to make any portion of her testimony confidential.

At Ms. Nazon's testimony deposition, Applicant objected to her testimony regarding Opposer's enforcement efforts because she had not disclosed such efforts in response to Applicant's discovery requests. Applicant has reiterated those objections in her brief. Opposer did not file a reply brief, or otherwise respond to the objection, and therefore we may treat it as conceded. In any event, Applicant's objection is well taken. Applicant specifically asked Opposer about any actions Opposer had taken regarding third parties involving the SEXSTROLOGY mark:

> Interrogatory No. 25: Describe in detail any conflict, controversy, lawsuits, infringement, cease and desist letter, opposition, cancellation, and any other challenge, whether currently pending or already resolved, with any third party involving the SEXSTROLOGY mark AND/OR YOUR SEXSTROLOGY services.

Opposer did not provide the requested information, instead objecting "that the information is not relevant to this action and is not reasonably calculated to lead to the discovery of admissible evidence." Exhibit D to Nazon test., 10 TTABVUE 258, Applicant's notice of reliance (NOR) Exhibit DD, 9 TTABVUE 187. Opposer cannot claim that information she refused to supply in response to a discovery request is now relevant, and we therefore sustain Applicant's objection.[5] While we have not considered Opposer's testimony regarding any actions she took toward third parties, we have considered her testimony

---

[5] We add that even if we considered Ms. Nazon's testimony on this point, it would not affect our ultimate decision.

regarding her efforts to discover third-party uses, as they were not the subject of a discovery request.

**Standing**

Opposer's ownership of her pleaded registration, which has been admitted by Applicant in her answer and made of record under Applicant's notice of reliance,[6] shows that Opposer has a direct commercial interest, an interest in the outcome beyond that of the public in general. Therefore, she has demonstrated her standing. *Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753.F.3d 1270, 111 USPQ2d 1058 (Fed. Cir. 2014); *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842 (Fed. Cir. 2000); *Otter Prods. LLC v. BaseOne Labs LLC*, 105 USPQ2d 1252, 1254 (TTAB 2012).

**Priority/Proprietary Rights**

Because Opposer's registration is of record, priority is not at issue. *See King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108 (CCPA 1974); *Otter Prods.*, 105 USPQ2d at 1254. However, because Opposer's registration is on the Supplemental Register, she must still prove that she has proprietary rights in the term she relies on to demonstrate likelihood of

---

[6] 9 TTABVUE 31, 33. Applicant contends in her brief that Opposer failed to properly introduce a copy of the registration prepared by the USPTO showing current status and title. 13 TTABVUE 10, n. 2. We agree that Exhibit 2 to Ms. Nazon's testimony deposition, 10 TTABVUE 119, is merely a plain copy and does not show status and title. Nor does Ms. Nazon's testimony regarding this exhibit provide the status of the registration. However, that is not necessary, because with her notice of reliance, Applicant herself submitted a printout of Opposer's registration, taken from the USPTO TSDR database, which shows Terry Nazon as the current owner of the registration, and the status of the registration as "registered." Once evidence is properly of record, it may be relied on by any party for any purpose.

confusion. *Otter Prods.*, 105 USPQ2d at 1255. Although the Supplemental Register registration removes priority as an issue, that is essentially all it does. A Supplemental Register registration is evidence of nothing more than the fact that the registration issued on the date printed thereon. *In re Federated Dep't Stores Inc.*, 3 USPQ2d 1541, 1543 (TTAB 1987). It is not entitled to the presumptions of Section 7(b) of the Trademark Act. *In re Chippendales USA, Inc.*, 622 F.3d 1346, 96 USPQ2d 1681, 1686 n.9 (Fed. Cir. 2010); *McCormick & Co., Inc. v. Summers*, 354 F.2d 668, 148 USPQ 272 (CCPA 1966). Nor can it be considered as evidence of a proprietary right in the registered mark. *Hi-Shear Corp. v. Nat'l Auto. Parts Ass'n*, 152 USPQ 341, 344 (TTAB 1966). Instead, because the mark in her Supplemental Register registration is presumed to be merely descriptive, *see Quaker State Oil Ref. Corp. v. Quaker Oil Corp.*, 453 F.2d 1296, 172 USPQ 361, 363 (CCPA 1972), Opposer has the burden to prove that her alleged mark has acquired distinctiveness. *Otter Prods.*, 105 USPQ2d at 1255.

Opposer's ownership of her Supplemental Register registration does provide one major advantage. Because priority is not in issue, Opposer need not establish that her claimed mark SEXSTROLOGY acquired distinctiveness prior to any date on which Applicant obtained rights in her mark SEXY ASTROLOGY; Opposer need only show that her claimed mark *now* has acquired distinctiveness. Thus, Opposer's arguments regarding her priority of use of SEXSTROLOGY dating back to 2003, and Applicant's arguments

claiming that her use of the SEXY ASTROLOGY mark in 2007 was prior to Opposer's acquiring trademark rights in SEXSTROLOGY, are largely irrelevant.[7]

We therefore consider whether the evidence shows that Opposer has now established proprietary rights in SEXSTROLOGY. Opposer's Supplemental Register registration for this mark issued on March 6, 2012, and therefore we treat the mark as being merely descriptive as of that date. *See* Section 23 of the Act, 15 U.S.C. § 1091, a mark that is registrable on the Principal Register may not be registered on the Supplemental Register; *Otter Prods.*, 105 USPQ2d at 1255; *In re Future Ads LLC*, 103 USPQ2d 1571, 1574 (TTAB 2012) (registration on the Supplemental Register is prima facie evidence that, at the time of registration, the registered mark was merely descriptive); *see also Quaker State*, 172 USPQ at 363.[8] Although the evidence as of that date is not sufficient to show acquired distinctiveness, we still consider it as part of the total picture of whether Opposer has established proprietary rights in her claimed mark.

---

[7] This is akin to the situation in which an opposer has a valid registration on the Principal Register that is not the subject of a counterclaim for cancellation; whether the applicant has made prior use of its mark is not relevant, as the registration itself means that priority is not in issue.

[8] We note that in 1988 Section 27 of the Trademark Act was amended to provide that "registration of a mark on the supplemental register shall not constitute an admission that the mark has not acquired distinctiveness." We view this provision as permitting a registrant to claim that its mark acquired distinctiveness subsequent to the issuance of its Supplemental Register registration, since if a mark were to have acquired distinctiveness as of the issuance of the registration on the Supplemental Register, it would be registrable on the Principal Register and therefore not eligible for registration on the Supplemental Register.

According to Opposer's testimony, she coined the term SEXSTROLOGY in approximately 2003, for an article that she was writing. *See* 10 TTABVUE 11, 51, 110-111. It was created by combining the words "sex" and "astrology." *Id.* at 12. She uses the word "to define astrology as it pertains to men and woman [sic], as it pertains to relationships, and as it pertains to the interaction between men and women." *Id.* at 21.

We point out that Opposer's merely using the term SEXSTROLOGY in various materials is not sufficient to show *service mark use* of the term for "astrology horoscopes," the service identified in her registration. Thus, the fact that Opposer, as she described it, "copyrighted" (by which she presumably meant "created") the word, does not show that she developed proprietary service mark rights in it.[9] Opposer also gave some rather vague testimony about her use of the "mark" in a newsletter: "I used it in that, because Patty was the millionaire matchmaker." 10 TTABVUE 13. The newsletter itself was never made of record, and we therefore cannot assess what impression the term may have conveyed, including whether it would even have been viewed

---

[9] The three pages made of record as Exhibit 3, 10 TTABVUE 120-122, submitted in support of Opposer's testimony as to her "copyright," show, on page 1, the copyright registration which issued on November 17, 2008, with the title www.terrynazon.com, and which Opposer explained was the copyright for her entire website. There is no mention of SEXSTROLOGY on this page. The second page appears to be a printout of a search of the Copyright Office public catalog, and lists a "text" type of work with the title "Sexstrology" that was created in 2004 and published on February 1, 2004. The third page, also a printout from the Copyright Office public catalog, shows this registration was cancelled.

as a service mark for astrology horoscopes.[10] Ms. Nazon also testified that the term "has appeared in autobook manuscripts that I have that I actually took off the market called Sexstrology." 10 TTABVUE 21. She gave no further information about these "autobook manuscripts" other than this one sentence, nothing about what the manuscripts are, when they appeared, for how long, how they were distributed, etc. We cannot conclude that Opposer developed proprietary rights in SEXSTROLOGY as a mark from this testimony.

Opposer has, however, provided documentary evidence in connection with some of her testimony regarding her use of SEXSTROLOGY. Opposer uses the SEXSTROLOGY mark on her Sexstrology Facebook page, for which she has approximately 1000 followers.[11] This page, Exhibit 7 to her testimony deposition, 10 TTABVUE 136-178, is headed "Sexstrology," with the words

---

[10] From the context of Ms. Nazon's testimony, it appears that this use in a newsletter occurred near the time she first coined the term; certainly there is no evidence that the term was used in newsletters that continued for an appreciable length of time. What we do know is that Opposer's print advertising occurred in the past, and that at some point it became "too expensive" and "wasn't viable." 10 TTABVUE 24.

[11] Ms. Nazon's testimony is somewhat unclear on this point. She first stated that she had 1000 followers, but when her counsel asked "how many?" she changed her answer to "I am not really sure, I haven't looked today." 10 TTABVUE 30. We do not know whether Ms. Nazon intended to imply that the number may have increased or decreased from whenever she had last checked it, but since she provided no further information, we treat 1000 as the operative number.

Opposer also testified that she has two additional Facebook pages, one called Facebook friends and one called Facebook fans. She did not submit documentary evidence showing how "sexstrology" is used on these pages, much less establish that she used the term as a mark, so we cannot determine what effect they might have on consumers. She did testify that her Twitter feed appears on her Facebook pages, but as discussed *infra*, the use of SEXSTROLOGY in connection with her tweets does not show trademark use.

"Public Figure" below, and with a logo of sorts at the left. The logo is not very clear. However, we can describe it as comprised of a large cursive capital "S" two lines tall, and to the right, "ex" on one line and "tro" below (with the "o" being formed by the symbol for woman), and an indecipherable design above, which we assume, based on the version shown at 10 TTABVUE 127, to be the symbols for man and woman, connected by a circle. To the left there is a photograph of Opposer that is larger than all of this matter.[12] The content of the 40-something pages appears to be very short posts consisting generally of a sentence or two giving an astrological comment for those with a birthday falling under a particular sign or signs, often including an advertisement to "Visit my website www.terrynazon.com to book your next consultations with me and get names, dates, times and places!," and/or advertising Opposer's program at iHeartRadio ("Have you Listened to your daily horoscope yet? #nowplaying Today's Planetary Pulse Wednesday Jan 21 @IHeartRadio http://www.iheart.com/show/Terry-Nazon. Astrology.Nation/"), 10 TTABVUE 137. Each post has a small version of the logo described above, except that the words "Public Figure" are omitted. It appears from the context that the most recent postings are from January 2015. The postings go back to March 30,

---

[12] Another iteration of the logo, which is somewhat clearer, is found at 10 TTABVUE 133. It, too, has the two-line tall cursive "S," and to the right, "ex" on one line. However, on the line below is "trilogy" (with the "o" being formed by the symbol for woman), so that the composite forms the stacked words SEX STROLOGY but with one large "S" shared by each of these words. As in the version at 10 TTABVUE 136, the indecipherable design is above, and the large photograph of Opposer appears to the left.

2011, on which date there were five separate postings, three with one sentence about an individual sign, e.g., "Scorpio is very serious about commitment, It's not easy to get them to cheat," one which shared a link for purchasing Opposer's Sexstrology Report, "Sexstrology Report Lover's Astrological Compatibility Report--$35.00; Terry Nazon Inc., Get Names," and one reminding viewers to get their horoscope from Opposer, with a photograph of Opposer, the identification "Terry Nazon World Famous Celebrity Astrologer," and the contact information "TERRYNAZON.COM, BY TERRY NAZON TOP 10 ASTROLOGER." 10 TTABVUE 177.

Opposer testified that she has "a whole line of Sexstrology reports that are called Sexstrology Relationship Reports," 10 TTABVUE 22, and that she has been producing them since 2004. She did not introduce any report, but one of her websites advertises "Sexstrology® Relationship Reports," described as "Sexstrology® my exclusive line of Marriage, Soulmate and Relationship Compatibility Reports." Exhibit 4, *id*. at 124. The exhibit, *id*. at 123-126, was downloaded on February 3, 2015, and it bears a copyright date of 2015. The first page offers tee shirts, and shows "New Products For February-Sexstrology® Tee Shirts. e.g., "Sun Sign Tee-Shirt Sexstrology® Ladies Sporty V-Neck." Ms. Nazon did not testify as to when the content shown in the exhibit was actually put on the website, but in introducing the exhibit, Ms. Nazon testified that "this is a prototype of my web store." *Id*. at 22. This testimony and the dates on the exhibit itself suggest that the website is of recent origin.

Opposer also has a website under the URL www.terrynazon.com. Exhibit 5, 10 TTABVUE 127-132. Although Ms. Nazon testified that the term SEXSTROLOGY would have first appeared on this website in 2003-2004, when she was writing the article for which she coined the term, *id*. at 25, as with Exhibit 4, this exhibit, too, appears to be of recent origin; embedded in the content area of some of the webpages is "3-February-2016," and the copyright date is 2015. The first page of the exhibit prominently features her photograph, above which is "Sexstrology®" and to the right of which is a logo similar to what was previously described: A large cursive "S" next to "ex" on one line and "trology" below "ex," with the first "o" in "trology" being the symbol for woman. In this iteration, there is an ® symbol immediately after "trology," and the symbols for man and woman, connected by a circle, above the text. This page and the one following feature various Sexstrology reports, e.g., ""Sexstrology® It's All About Her Astrology Report," "Sexstrology® Lover's Experience, What's Ahead?," "Sexstrology Report Lover's Astrological Compatibility Report." In the absence of explanatory testimony, we cannot treat this evidence of what appears to be relatively recent usage as showing how the term SEXSTROLOGY appeared on Opposer's website in previous years, or ascertain what impact it might have had on consumers.

Ms. Nazon testified that she has a blog that also appears on her website. *Id*. at 26, Exhibit 6, *id*. at 133-35. The first page of the exhibit has a box that says "Showing posts with label Sexstrology. Show all posts." This first page

shows only one post, from January 2, 2012, which says, "It's 2012 and Love is in the Air! Check out all of my Sexstrology ™ Reports." Below this is a picture of her with, on the right, SEXSTROLOGY in the logo form shown in Exhibit 5, with the exception that there is no ® symbol. Nothing is listed under "Reactions" or "Older Posts." As far as we can tell from this exhibit, this was the only post on her blog that referred to SEXSTROLOGY.

Opposer also has a Twitter account, and the Twitter page indicates that she has 68,600 followers. Exhibit 8, 10 TTABVUE 179. Only the front page is of record; it has her photograph, under which it says "Terry Nazon @ SEXSTROLOGY." Her tweets are headed in this manner as well. This is the only way in which SEXSTROLOGY appears in the exhibit. Ms. Nazon has explained that "SEXSTROLOGY" is her Twitter handle, and the manner in which SEXSTROLOGY appears in the exhibit is in the nature of such a handle, rather than as a trademark for astrology horoscopes.[13] On this record, Opposer has not shown that the use of SEXSTROLOGY as her Twitter handle created trademark rights in the term.

Ms. Nazon also gave testimony and submitted evidence about other activities. For example, Exhibit 10 to her deposition, 10 TTABVUE 209, which lists her services and the prices for them, does not mention the term SEXSTROLOGY at all; the price sheet is headed "Terry Nazon Inc. Terry

---

[13] Ms. Nazon testified that her Twitter feed runs on her Facebook pages as well. However, as previously noted, since SEXSTROLOGY is not used on Twitter in a trademark manner, the inclusion of the feed on her Facebook pages does not establish proprietary rights.

Nazon World Famous Astrology," with a photo of Opposer, and the services are listed as "[X] Minutes Telephone Consultation with Terry Nazon," with a price for the variously timed sessions. Opposer also has an account with iHeartRadio; as of the date of her deposition, on July 8, 2015, she was in the third year of her contract with this company. She explained that iHeartRadio owns 2500 radio stations nationwide, and that she has an exclusive contract to provide horoscope services to them. Opposer creates thirteen individual shows; consumers can click on the particular show and listen to the audio recording. The exhibit she offered in support of this testimony, Exhibit 9, 10 TTABVUE 180-208, has the title "Today's Planetary Pulse" for each of the entries. In the 27 pages comprising this exhibit, the only reference to SEXSTROLOGY that Opposer identified was at 10 TTABVUE 183 where, under the third of four audio listings entitled "Today's Planetary Pulse," there is the statement, "Go to my twitter page @Sexstrology or my Facebook Fan Page for the link to watch the Asteroid 2004 BL86 pass by Earth today." This reference does not represent trademark use of SEXSTROLOGY for astrology horoscopes. Ms. Nazon also testified that at the end of each recording she tells the public to follow her on her Twitter page at Sexstrology. *Id.* at 37. However, as noted above, using a term as part of a Twitter handle to identify oneself does not necessarily evidence trademark use of the term for particular services.[14]  Even

---

[14]  Ms. Nazon also testified that during a broadcast she might make reference to SEXSTROLOGY. However, her testimony shows that she does not make a distinction between a reference to the term SEXSTROLOGY and use of SEXSTROLOGY as a

taken together, this evidence fails to show proprietary rights in SEXSTROLOGY as a trademark for astrology horoscopes.

Applicant, on the other hand, has submitted several examples of third-party use of the term "SEXSTROLOGY" or "SEXTROLOGY." We recognize that Opposer's mark is SEXSTROLOGY, but consider the references to SEXTROLOGY relevant to our determination as to whether Opposer has proprietary rights in her mark since the two terms are nearly identical and, indeed, can sound the same. Therefore, evidence of current descriptiveness of "sextrology" would also show the continuing descriptiveness of "sexstrology," since one cannot obtain rights in a mark merely by a slight misspelling of a recognized descriptive term. *In re Quik-Print Copy Shops*, 616 F.2d 523, 205 USPQ 505, 507 n.9 (CCPA 1980) (QUIK-PRINT held descriptive; "There is no legally significant difference here between 'quik' and 'quick'"); *In re Carlson*, 91 USPQ2d 1198, 1200 (TTAB 2009) ("in general, a mere misspelling of a word is not sufficient to change a merely descriptive term into an inherently distinctive trademark"); *Hi-Shear Corp.*, 152 USPQ at 343 (HI-TORQUE "is the phonetic equivalent of the words 'HIGH TORQUE'").

The evidence showing use of SEXTROLOGY includes a book offered on amazon.com, downloaded March 11, 2015, with the title, "The Complete Idiot's Guide to Sextrology," described as a "practical guide" by an "astrologist extraordinaire," who "explains how to use the stars to find the perfect sexual

mark for astrology horoscopes, and therefore we give very limited weight to such testimony.

mate." NOR Exhibit N, 9 TTABVUE 100-104. The paperback version is shown with a "bargain price" as of January 2, 2008. Another book, "SEXTROLOGY" by Starsky + Cox, has the subtitle, "The Astrology of Sex and the Sexes," and is offered in Kindle, iBook and Nook versions. NOR Exhibit X, *id*. at 140-141. This same book is offered on the Barnes & Noble website, see NOR Exhibit Y, *id*. at 142-150. Another book by these same authors, offered on amazon.com and showing a date of December 29, 2009 for the paperback edition, is called "Cosmic Coupling: The Sextrology of Relationships." NOR Exhibit Z, *id*. at 151-156. A Twitter page is called "Sextrology"@LoveSexZodiacs, NOR Exhibit P, *Id*. at 107-116. The tweets on this page, each of which references a trait of a particular sign, were posted from November 25, 2012 to January 9, 2014.[15] On the wittyprofiles.com website, a quote begins, "Sextrology: Pisces." NOR Exhibit V, *id*. at 131. The blog Psychic Blog; Psychics Foretell, NOR Exhibit W, *id*. at 132-139, states that it offers horoscopes, and has an article posted on June 26, 2012, entitled "Sextrology," with the subheading "Sex and Astrology," and which discusses the characteristics, including in terms of love and romance, for men and women for each sign of the zodiac.

Applicant also made of record a definition of "sextrology" from Definition Of, a "community dictionary": "a contraction of sex + astrology; the stars to study their influence on one's sex life and sexual relationships." NOR Exhibit M, *id*. at 91-92.

---

[15] The first tweet, on November 25, 2012, states, "Had to come back. Old twitter page got deleted by a hater!," indicating that there had been earlier tweets as well.

With respect to references to SEXSTROLOGY, the DXPNET website, at www.dxpnet.com, NOR Exhibit Q, i*d*. at 117-118, has the heading "Sexstrology—Gemini—Thinking Butterfly," followed by text describing characteristics of both the Gemini Female and the Gemini Male. A posting on tumblr.com begins, "according to sexstrology, aquarius would have the best sex with gemini, libra, or Sagittarius." NOR Exhibit T, *id*. at 127. Another posting on the tumblr site begins, "IT'S SEXSTROLOGY NIGHT!" NOR Exhibit U, *id*. at 128-129. An article on the website The Noir Agenda is called "SEXSTROLOGY 101," and gives romantic or sexual characterizations for those with particular astrological signs; it also appears to sell items from numerous sources that would appeal to those people. NOR Exhibit AA, *id*. at 157-167. Another website, for Asiance Magazine, has a heading, "Welcome to Marisa Sung's Profile," followed by the subtitle, "Aquarius Love and Sexstrology"; it was posted on April 1, 2012. NOR Exhibit BB, *id*. at 168-172. It has subheadings such as "Aquarius Sex" and "Aquarius Love and Relationships," and explains Aquarius compatibility with those having other astrological signs.[16]

---

[16] Applicant also submitted some evidence that does not appear to relate to astrological predictions or analysis, although it does show that "Sexstrology" is being treated by the sources as a recognized word. For example, there is something called a "Sexstrology series" on the website goodreads, www.goodreads.com, Exhibit R, *id*. at 119-123, which lists individual books for each zodiac sign, followed by "(Sexstrology)," e.g. "Capricorn (Sexstrology)." The descriptions of each book indicate that they are romance novels with a mystical element.

In addition, Opposer herself has admitted that there is voluminous third-party use of "sexstrology," responding "I do" to the question, "But you believe we can find millions of examples of third party uses of Sexstrology in some manner." 10 TTABVUE at 83. Even though Opposer regards the ten third-party users of SEXSTROLOGY/SEXTROLOGY presented to her during cross-examination as infringers of her trademark, and even though we recognize that it is not always possible for a trademark owner to pursue every infringer at once, the multitude of descriptive, nontrademark uses of the term have an effect on the perception of the public, as it reinforces the view that SEXSTROLOGY is a type of astrology rather than a source identifier.[17]

In determining whether or not a term has acquired distinctiveness as a trademark, we must consider the degree of descriptiveness of the term. "The greater the degree of descriptiveness the term has, the heavier the burden to prove it has attained secondary meaning." *Yamaha Int'l Corp. v. Hoshino Gakki Co. Ltd.*, 840 F.2d 1572, 6 USPQ2d 1001,1008 (Fed. Cir. 1988).

The evidence submitted by Applicant shows that the descriptive meaning that SEXSTROLOGY/SEXTROLOGY had when Opposer's Supplemental Register registration issued in 2012 still remains, and that, in fact, the term is highly descriptive. Although a definition in a community dictionary by itself might have limited probative value, as would a single Twitter handle, here the record shows that there are multiple third-party and mainstream uses of the

---

[17]  In our view, the uses of SEXSTROLOGY/SEXTROLOGY presented by Applicant are descriptive use, rather than trademark use.

18

term in a descriptive manner. These uses show that, for the relevant consumers, SEXSTROLOGY identifies astrological advice about a particular subject. Even Opposer treats SEXSTROLOGY as the name of the subject matter:

Q: So afterwards, you wanted to write a book; is that accurate?

A: Yes.

Q: And what was the subject matter?

A: Sexstrology, the same subject matter I wrote the article on.

Q: So the subject matter was on Sexstrology?

A: Yes.

Test. dep., 10 TTABVUE 51-52.

Opposer's evidence regarding her use of SEXSTROLOGY is not sufficient to overcome the Applicant's evidence of descriptiveness. We have already discussed the flaws in much of the Opposer's evidence. In the other evidence, including her Facebook Sexstrology page and her advertising of Sexstrology Relationship Reports, "Sexstrology" may just as easily be viewed as the subject matter of the posts and the reports, rather than as a source designator for them. With specific regard to the Facebook evidence, we note that running through the Facebook pages is a large picture of Terry Nazon with her name along the side and, in posts through September 2014, the words "Terry Nazon Astrology Nation" and a description of who she is, which further suggests that SEXSTROLOGY is the subject matter, as the picture and text are likely to

19

indicate to readers that Terry Nazon is the source of the posts.[18] We also point out that the 1000 followers of the Facebook Sexstrology page is a relatively small number in terms of showing acquired distinctiveness. As for the Sexstrology Relationship Reports, it is not clear from the exhibits whether these reports would even be considered the *services* of astrological horoscopes, as opposed to written materials.

We acknowledge that on Opposer's websites, Exhibits 4 and 5, the ® symbol figures prominently. In fact, Applicant characterizes this as "excessive use of the registration symbol," and suggests "the screenshots were created for use in this litigation." 13 TTABVUE 16, n. 3. Whether or not this assertion is true, the use of the ® symbol is of recent origin, with the webpages showing a 2015 date. As a result, we cannot conclude that there has been sufficient exposure, in terms of numbers of people and length of time, for the highly descriptive term SEXSTROLOGY to be recognized as Opposer's trademark for the services of "astrological horoscopes."

Furthermore, the number of third-party descriptive uses in the record indicate that use by Opposer is not substantially exclusive as required for a showing of acquired distinctiveness under Section 2(f). *See, e.g., Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401, 222 USPQ 939, 940-41 (Fed. Cir. 1984);

---

[18] The next group of posts, beginning in December 2014 and continuing through January 29, 2015, do not include the words "Astrology Nation," but the large photo of Ms. Nazon with her name at the side continues to run through the Facebook pages.

*Nextel Communications Inc. v. Motorola Inc.,* 91 USPQ2d 1393, 1408 (TTAB 2009).

Because Opposer has failed to demonstrate that she has established proprietary rights in SEXSTROLOGY as a trademark for astrological horoscopes, she has failed to prove a necessary element of her case, and the opposition may be dismissed on this basis alone.

**Likelihood of Confusion**

In order to render a complete opinion, we will also address the issue of likelihood of confusion. In doing so, we assume for purposes of this analysis that Opposer's efforts were sufficient to establish that she has proprietary rights in SEXSTROLOGY as a mark for astrological horoscopes, and we will treat the mark as highly suggestive instead of descriptive. *See Sure-Fit Prods. Co. v. Saltzson Co.,* 254 F.2d 158, 117 USPQ 295, 296 (CCPA 1958) (even a mark registered on the Principal Register with a showing of secondary meaning can still be in the category of a weak mark).

Our determination of the issue of likelihood of confusion is based on an analysis of all of the probative facts in evidence that are relevant to the factors set forth in *In re E. I. du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973). *See also In re Majestic Distilling Co., Inc.,* 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003).

Opposer's identified "astrology horoscopes" services are encompassed by Applicant's identified "astrology consultation" services, and therefore the

services must be deemed legally identical in part. As such, they must also be presumed to travel in the same channels of trade to the same classes of consumers. *In re Viterra Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (absent restrictions in the application and registration, legally identical goods and services are presumed to travel in the same channels of trade to the same class of purchasers).

This brings us to a consideration of the marks. As noted, we treat Opposer's mark as highly suggestive, and as a result it is entitled to a narrow scope of protection. The cases are legion that "where a party chooses a trademark which is inherently weak, he will not enjoy the wide latitude of protection afforded the owners of strong trademarks." *Sure-Fit Prods. Co. v. Saltzson Drapery Co.*, 117 USPQ at 297; *see, e.g.*, *King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108, 109-10 (CCPA 1974) ("The expressions 'weak' and 'entitled to limited protection' are but other ways of saying . . . that confusion is unlikely because the marks are of such non-arbitrary nature or so widely used that the public easily distinguishes slight differences in the marks under consideration . . . ."); *Couch/Braunsdorf Affinity, Inc. v. 12 Interactive, LLC*, 110 USPQ2d 1458, 1478 (TTAB 2014). Thus, although Opposer's mark includes the terms SEX and a formative of ASTROLOGY (STROLOGY), and Applicant's mark has a variation of SEX (SEXY) and the word ASTROLOGY, when considered in their entireties the marks convey different meanings and commercial impressions. It is clear to one looking at or hearing Applicant's

mark that the first word is SEXY, not SEX, and as Applicant has shown by her submission of dictionary definitions of these words, the words SEXY and SEX have different meanings. When each is combined with the other element in the respective marks, the result is that Opposer's mark (again, treating it as suggestive rather than descriptive) conveys that her "astrology horoscopes" services are concerned with the effect of the stars on one's romantic life or the romantic compatibility of various astrological signs. Applicant's mark, SEXY ASTROLOGY, on the other hand, does not convey such a meaning. It clearly references ASTROLOGY, and directly tells consumers that this is the subject of Applicant's "astrology consultation" services. However, the term SEXY, as used with ASTROLOGY, does not have a clear meaning. What is SEXY ASTROLOGY? Astrology that is interesting or attractive, like a sexy stock?[19] Or astrology consultations that are delivered in a sexually suggestive manner?[20] Or would the term be viewed as an ironic pairing of something sexually suggestive with a pseudo science[21] as the screen shots from Applicant's YouTube videos indicate? See, for example, NOR Exhibit M, 9 TTABVUE 93-99. "Sexy" could even be perceived as referring to the person who provides the astrology service.

---

[19]  See definition of "sexy": "generally attractive or interesting; APPEALING <a sexy stock>." NOR Exhibit I, 9 TTABVUE 85-86.

[20]  "Sexy" is also defined as "sexually suggestive or stimulating: EROTIC." *Id.*

[21]  Opposer testified that "Astrology is pseudo science." 10 TTABVUE 18.

Opposer has discussed in her brief only the *du Pont* factors of the similarity of the marks, similarity of the services, and similarity of marketing and trade channels. See 11 TTABVUE 11-15. Although, as we have found, the *du Pont* factors of the similarity of the services and the trade channels favor Opposer's position, because of the differences in the marks, and the limited scope of protection to which Opposer's mark is entitled, we find that Applicant's mark SEXY ASTROLOGY for astrology consultation is not likely to cause confusion with Opposer's mark SEXSTROLOGY for astrology horoscopes.

In conclusion, we have found that Opposer has failed to prove that she has proprietary rights in SEXSTROLOGY as a trademark for astrology horoscopes, and that, even if we accept that she had shown such rights, she has not proven that Applicant's mark for her services is likely to cause confusion with Opposer's mark for astrology horoscopes.

**Decision**: The opposition is dismissed.